MARTIN, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. BATCHELDER, J. (p. 447), delivered a separate opinion concurring in the result.
OPINION
BOYCE F. MARTIN, JR., Circuit Judge.
This case presents the question whether the Supreme Court’s decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), applies retroactively on collateral review to sentences imposed before Booker but after the Court decided Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We hold that it is not retroactive and therefore affirm petitioner Darryl Duncan’s sentence.
In 2002, Duncan was stopped by an officer who knew of Duncan’s outstanding warrants. The officer approached Duncan, determined he had a gun, and arrested him. In 2004, Duncan pleaded guilty to being a felon in possession of a firearm. In calculating the appropriate Sentencing Guidelines range, the sentencing judge cited Duncan’s criminal history and stated that “since armed career criminal applies, I’m stuck with a guideline range of 188 to 235 months.” The judge gave Duncan 188 months, the lowest available sentence under the Guidelines, “because the only reason [he] got up into that range was because [he was an] armed career criminal.” The judge observed that without the armed career criminal guideline Duncan “would have been in the 70-87 month range” and that 188 months was the “minimum that [was] available.” In September 2005, Duncan moved pursuant to 18 U.S.C. § 2255 for the district court to vacate his sentence; the court denied the motion. This Court then granted Duncan a “certificate of appealability with respect to the issue of whether [he] is entitled to be resentenced in the wake of Booker.” We thus address whether Booker applies retroactively to sentences imposed after the Supreme Court decided Blakely.
This question’s resolution matters to Duncan because if Booker applies retroactively he is entitled to resentencing. Duncan preserved his Sixth Amendment challenge, and it is not dispositive that he *444 suffered no direct constitutional violation because his Guidelines range would have been the same absent any judge-found facts. This is because the Supreme Court in Booker consolidated the cases of Booker and Fanfan and ultimately invalidated both their sentences. While Booker’s sentence was improper because it had been increased on the basis of judge-found facts not submitted to a jury, Booker, 543 U.S. at 244, 125 S.Ct. 738, “the Court held that the district court had violated Fanfan’s statutory right to be sentenced under the advisory guidelines,” “because Fanfan was sentenced under the erroneous assumption that the guidelines were mandatory,” and thus he could seek “resentencing under the advisory guidelines.” United States v. Hochschild, 442 F.3d 974, 980 (6th Cir.2006).
In other words, a defendant “has both constitutional and statutory rights under Booker,” Hochschild, 442 F.3d at 980, and defendants sentenced under the erroneous belief that the guidelines are mandatory suffer non-constitutional Booker-error. United States v. Barnett, 398 F.3d 516, 524-25 (6th Cir.2005).[1] There is every indication here that the sentencing judge felt constrained by the mandatory guidelines, and, post-Booker, defendants have the right to individualized sentencing in light of the statutory sentencing factors, 18 U.S.C. § 3553, because “as a general matter, courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines.” Kimbrough v. United States, 552 U.S. -, 128 S.Ct. 558, 578, 169 L.Ed.2d 481 (2007) (internal quotations and citations omitted).
So, we must determine whether Booker is retroactive back to Blakely. In Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and subsequent cases, the Supreme Court explained the framework for determining when rules apply retroactively to final criminal judgments.[2] Under Teague, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases still on direct review. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Yet a “new rule” also applies retroactively in a collateral proceeding if (1) the rule is substantive or (2) the rule is a “watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.” Schriro v. Summerlin, 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (quotations omitted).
The first question is whether Booker, in light of Blakely, applied an old rule or announced a new one. A case announces a new rule when “it breaks new ground or imposes a new obligation on the States or the Federal Government.” *445 Teague, 489 U.S. at 301, 109 S.Ct. 1060. A new rule is further defined as “a rule that ... was not dictated by precedent existing at the time the defendant’s conviction became final,” Schriro, 542 U.S. at 352, 124 S.Ct. 2519, and a decision does not announce a new rule when it is “merely an application of the principle that governed” a prior Supreme Court case. Teague, 489 U.S. at 307, 109 S.Ct. 1060.
We have previously held that Booker is not retroactive back to the time that the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), see Valentine v. United States, 488 F.3d 325 (6th Cir.2007), but the Apprendi line of cases is long. Logically, at some point in this chain — stretching from Apprendi to Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and through Blakely, Booker, Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007), Gall v. United States, — U.S. -, -, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007), and Kimbrough v. United States, — U.S. -,-, 128 S.Ct. 558, 570, 169 L.Ed.2d 481 (2007) — the rule Apprendi announced must stop being a new rule in every varying application and instead must become an old one that applies on collateral review. Duncan argues that this switch occurred after Blakely but before Booker; the government disagrees, though it need not specify the exact break.
Duncan is right that the argument that Blakely dictated Booker is considerably stronger than the argument that Apprendi did. Although the Supreme Court ignited the Apprendi revolution with the rule announced there — -“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt,” Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 — it was Blakely that clarified the meaning of “statutory maximum”: “the ‘statutory maximum’ for Ap-prendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” 542 U.S. at 303, 124 S.Ct. 2531 (emphasis in original). And when the Booker Court struck down the federal Sentencing Guidelines, it observed that as “the dissenting opinions in Blakely recognized, there is no distinction of constitutional significance between the federal Sentencing Guidelines and the Washington procedures at issue in that case.” Booker, 543 U.S. at 233, 125 S.Ct. 738.
Nevertheless, before Booker was handed down (but after certiorari had been granted) a majority of this Court held that Blakely did not require us to strike down the federal Sentencing Guidelines. United States v. Koch, 383 F.3d 436 (6th Cir.2004) (en banc). In Koch, though we observed that “[i]t may be that the trajectory of Apprendi, Ring, and Blakely will end with a nullification of the Guidelines,” we declined to do so for prudential reasons. Id. at 442. Specifically, we observed that lower courts should not overrule Supreme Court decisions — even when their reasoning has been undermined — and we interpreted Edwards v. United States, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), as established precedent upholding the Guidelines against a Sixth Amendment challenge. We also relied on the fact that the sentencing scheme struck down in Blakely, although identical in effect to the Federal Guidelines, differed in form: the sentencing scheme struck down in Blakely was promulgated by Washington’s legislature while the federal Guidelines were promulgated by the Sentencing Commission, although we admitted that both had the force of law and both similarly bound courts. Koch, 383 F.3d at 439 (citing Stin- *446 son v. United States, 508 U.S. 36, 42, 113 S.Ct. 1913, 123 L.Ed.2d 598(1993)).
Of course, in Booker, the Supreme Court stated that Edwards’s holding was not germane to deciding whether or not the Guidelines were unconstitutional, Booker, 543 U.S. at 240-41, 125 S.Ct. 738, and it further held that “the fact that the Guidelines were promulgated by the Sentencing Commission, rather than Congress, lack[ed] constitutional significance.” Id. at 237, 125 S.Ct. 738. This latter conclusion was informed by the Court’s prior decision in Mistretta v. United States, 488 U.S. 361, 371, 393-94, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), in which the Court, in upholding the Guidelines against delegation and separation-of-powers challenges, observed that the Sentencing Commission was “quasi-legislative” in function.[3]
And, there are pragmatic reasons to believe that Blakely dictated Booker. Justice O’Connor, whose Blakely dissent prophesized the Guidelines’s demise, described the Blakely decision at the Ninth Circuit judicial conference as a “number ten earthquake.”[4] This was not hyperbole. Within a month of Blakely, thousands of criminal appeals challenging the federal Sentencing Guidelines were filed, several federal courts had struck down some or all of the Guidelines, and the Acting Solicitor General sought expedited review in the Supreme Court of two decisions questioning the Guidelines’s constitutionality. See, e.g., Douglas A. Berman, Reconceptualizing Sentencing, 2005 U. Chi. Legal F. 1, 34-36 (2005). Blakely’s significance for the mandatory Guidelines’s future viability could not be missed: the “entire federal criminal justice system came to a standstill in anticipation of the Court’s decision in Booker.” United States v. Paladino, 401 F.3d 471, 485 (7th Cir.2005) (Ripple, J., dissenting). After Blakely, the writing was on the wall that the Guidelines were doomed in a way that was not the case after Apprendi was decided. Indeed, this case is yet another of the Blakely earthquake’s many reverberations, and thus it is at least arguable that Booker should operate retroactively back to when the Supreme Court decided Blakely.
Yet this case does not arise in a vacuum. Our holding in Koch that Blakely did not require us to strike the Guidelines down, though ultimately proven incorrect, nevertheless gives us great pause in considering Duncan’s argument. And though they were decided in different postures than this case and thus do not directly control our decision today, the sweeping language of Humphress v. United States, 398 F.3d 855 (6th Cir.2005) and Valentine, 488 F.3d at 330, counsels against holding that Booker merely announced an old rule. We thus hold that Booker announced a new rule *447 and did not merely apply the rule announced in Blakely.
Summerlin forecloses Duncan’s remaining avenues for retroactivity: that either the Booker rule is “substantive” or that it announced a “watershed rule of criminal procedure.” In Summerlin, the Supreme Court held that Ring — one of the many cases following Apprendi — is not retroactive on collateral review. Ring held that defendants are entitled to a jury trial on all aggravating factors possibly leading to the imposition of the death penalty. 536 U.S. at 609, 122 S.Ct. 2428. In Summer-lin, the Court determined that Ring did not “alter[] the range of conduct or the class of persons that the law punishes,” and thus was not a “substantive” rule. Summerlin, 542 U.S. at 353, 124 S.Ct. 2519. Instead, Ring merely “allocate[d] decisionmaking authority” by requiring a jury rather than a judge find the facts essential to punishment and thus was a “prototypical procedural rule[.]” Id. This logic equally applies to both Blakely and Booker, so the rules announced in both are, like the rule announced in Ring, procedural.
Second, Summerlin held that Ring did not announce a “watershed rule of criminal procedure” because the Court could not determine whether juries were so much more accurate than judges such that the change brought about by Ring “impli-cat[ed] the fundamental fairness and accuracy of the criminal proceeding”; indeed, the Summerlin Court found that it could not say either way: the evidence was simply “too equivocal.” Id. at 355, 124 S.Ct. 2519. Moreover, the Booker remedial opinion left sentencing authority, albeit with increased discretion, with sentencing judges when it made the Guidelines “effectively advisory,” so Booker could not have announced a “watershed rule.”
Finally, informing our decision today is the recognition that to accept Duncan’s argument that Booker operates retroactively back to Blakely would create a split with our sister circuits where one did not exist before, see e.g., McReynolds v. United States, 397 F.3d 479, 481 (7th Cir.2005), which we are wary of doing. Thus, we decline Duncan’s invitation to create this split and hold that the Supreme Court’s decision in Booker is not retroactive on collateral review for sentences imposed after Blakely. We therefore AFFIRM Duncan’s sentence.

. See also Gall v. United States,-U.S.-, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.”) (emphasis added).

. It is not entirely clear that Teague's framework is appropriate for federal habeas petitions under 18 U.S.C. § 2255 because many of the comity and federalism concerns animating Teague are lacking. See Valentine v. United States, 488 F.3d 325, 341 (6th Cir.2007) (Martin, J., dissenting). But it has been this Court's practice to apply Teague to § 2255 petitions, and we adhere to it today.

. Although we ask whether "reasonable jurists could differ as to whether precedent compel[led] the sought-for rule," Beard v. Banks, 542 U.S. 406, 416 n. 5, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004), that inquiry does not compel us to simply count dissenting Justices or lower court judges. Indeed, the Teague Court’s primary example of a case that did not announce a new rule was Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), which was a 5-4 decision holding that a jury instruction allowing the jury to presume malice unconstitutionally relieved a state of its burden of proof beyond a reasonable doubt. Three years after Francis was decided, the Court, in Yates v. Aiken, 484 U.S. 211, 216-17, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988), quoted in Teague, 489 U.S. at 307, 109 S.Ct. 1060, held that Francis did not announce a new rule because it "was merely an application” of principles the Court had previously established. Justice O’Connor, Teague’s author, dissented in Francis.

. Lyle Denniston, Justices Agree to Consider Sentencing, N.Y. Times, Aug. 3, 2004, at A14.