RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0101p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

JERRY LANE WOOTEN,

    *Petitioner-Appellant,*

  *v.*

E. K. CAULEY, Warden,

    *Respondent-Appellee.*

No. 09-6405

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 09-00067—Henry R. Wilhoit, Jr., District Judge.

Decided and Filed: April 12, 2012

Before: CLAY, GIBBONS, and WHITE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Charles P. Wisdom, Jr., Valorie D. Smith, ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee. Jerry L. Wooten, Ashland, Kentucky, pro se.

  CLAY, J., delivered the opinion of the court, in which GIBBONS, J., joined. WHITE, J. (pp. 12-13), delivered a separate opinion concurring in the result.

_____

**OPINION**

_____

  CLAY, Circuit Judge. Petitioner Jerry Lane Wooten, appearing *pro se*, appeals the judgment of the district court dismissing his application for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, to vacate his money laundering conviction under 18 U.S.C. §1956. For the reasons set forth below, we **AFFIRM**.

1

## BACKGROUND

Petitioner operated "Beck's Wheels," a licensed business buying and selling automobile parts to consumers and mechanics as well as providing other automobile services.  During the course of business, Petitioner solicited, bought, and sold automobile parts that he knew to be stolen.  Petitioner and others working with him would cash a nine thousand dollar check every morning, bring the cash back to their business location, and use the cash to purchase goods for their business.  Individuals lined up outside of the store and entered, one at a time, to sell stolen parts to Petitioner.  Some of the for-sale items brought to Petitioner were unsolicited, while others, such as air bags, were stolen and delivered to Petitioner at his request.  Petitioner resold the stolen items to individuals, mechanics, and businesses at a higher price than he paid for them.  He shipped some of the stolen goods across state lines to his brother in Alabama, who operated a similar business, and to another purchaser in California.  Petitioner shipped the goods by commercial carrier or drove the goods, by van, to the out-of-state purchasers himself.  Petitioner's operation was discovered during an FBI investigation.

In 2000, Petitioner was convicted by a federal jury of conspiracy to transport stolen goods and conspiracy to launder money, in violation of 18 U.S.C. § 371; interstate transportation of stolen goods, in violation of 18 U.S.C. § 2314; aiding and abetting, in violation of 18 U.S.C. § 2; structuring financial transactions, in violation of 31 U.S.C. § 5324(a)(3); and money laundering in the amount of more than two million dollars, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).  On May 23, 2000, Petitioner was sentenced to 188 months imprisonment.

Petitioner unsuccessfully appealed to this Court and moved twice to vacate his conviction pursuant to 28 U.S.C. § 2255.  Neither § 2255 motion was decided in Petitioner's favor, and Petitioner was not granted permission to file additional § 2255 motions.

Petitioner subsequently filed a petition in the district court requesting habeas relief from his conviction pursuant to 28 U.S.C. § 2241.  In his petition, he asserted that the court had jurisdiction to review his petition for habeas relief under § 2241 because

he fell within the "savings clause" of § 2255. He argued that the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008), changed the definition of "proceeds" in 18 U.S.C. § 1956 and that he is "actually innocent" of money laundering under the new definition. The district court denied relief and dismissed the action, finding that the petition "appear[ed]" to be time-barred on the basis of the one-year statute of limitations in 28 U.S.C. § 2255(f)(3). The court further held that Petitioner could not prove his actual innocence under *Santos* anyway, because *Santos* was not retroactively applicable to cases on collateral review and was not applicable to Petitioner's habeas petition on the merits.

## DISCUSSION

### I.    STATUTE OF LIMITATIONS

The district court held that Petitioner's § 2241 habeas petition was time-barred under the one-year statute of limitations in 28 U.S.C. § 2255(f)(3). Because Petitioner relied on the *Santos* decision as the basis of his habeas petition, the district court found that the statute of limitations had run on June 2, 2009, one year after the *Santos* decision was issued and over two months prior to Petitioner's August 10, 2009 habeas filing.

This Court reviews *de novo* a district court's dismissal of a petition for writ of habeas as time-barred. *Souter v. Jones*, 395 F.3d 577, 584 (6th Cir. 2005); *McSwain v. Davis*, 287 F. App'x 450, 453 (6th Cir. 2008).

There exists a one-year statute of limitations for motions filed pursuant to 28 U.S.C. § 2255, *see* 28 U.S.C. § 2255(f), and for state prisoners filing certain habeas petitions, *see* 28 U.S.C. § 2244(d)(1). There is no statute of limitations for federal prisoners filing habeas petitions pursuant to 28 U.S.C. § 2241. *Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007).

Petitioner is a federal prisoner who filed his petition pursuant to § 2241. He merely invoked the savings clause of § 2255 to demonstrate that the court had jurisdiction to review his § 2241 petition. The use of the savings clause to establish jurisdiction does not transform a § 2241 habeas petition into a § 2255 motion subject to

the one-year statute of limitations, nor does it force the § 2255 statute of limitations upon the § 2241 petition. Respondent concedes this matter as well. For this reason, we find that the petition is not subject to the one-year statute of limitations and thus is not time-barred.

## II.    ACTUAL INNOCENCE CLAIM

The district court determined that, even if the petition was not barred by the statute of limitations, Petitioner failed to demonstrate "actual innocence" and therefore was not entitled to a vacation of his conviction for money laundering. We agree.

### A.    Legal Background

This Court reviews *de novo* a district court's denial of a habeas petition filed under 28 U.S.C. § 2241. *Charles v. Chandler*, 180 F.3d 753, 755 (6th Cir. 1999) (per curiam).

A federal prisoner must challenge the legality of his detention by motion under 28 U.S.C. § 2255, but may challenge the manner or execution of his sentence under 28 U.S.C. § 2241. *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). However, a prisoner may also challenge the legality of his detention under § 2241 if he falls within the "savings clause" of § 2255, which states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255(e) (emphasis added); *Peterman*, 249 F.3d at 461. Thus, through the § 2255 "savings clause" vehicle, a petitioner may seek habeas relief under § 2241 where he can show that § 2255 provides an "inadequate or ineffective" means for challenging the legality of his detention. The Sixth Circuit has found the savings clause to apply only where the petitioner also demonstrates "actual innocence." *Peterman*, 249 F.3d at 461–62; *Charles*, 180 F.3d at 757.

**B.        Analysis**

Petitioner argues that his remedy under § 2255 is inadequate and ineffective to test his detention because he is unable to bring another § 2255 motion. Specifically, Petitioner is time-barred from presenting a new § 2255 motion. *See* 28 U.S.C. § 2255(f). He has also been denied permission to file second or successive motions. *See* 6th Cir. R. 22(b)(2). Furthermore, successive § 2255 motions require the presentation of new factual evidence or the demonstration of a new rule of constitutional law, and Petitioner can present neither. *See* 28 U.S.C. § 2255(h). Thus, Petitioner is unable to use § 2255 to challenge the legality of his detention.

However, the inability to use § 2255 to challenge the legality of one's detention is not enough to prove inadequacy or ineffectiveness. *Peterman*, 249 F.3d at 461. "[T]he § 2255 remedy is not considered inadequate or ineffective simply because § 2255 relief has already been denied . . . or because the petitioner is procedurally barred from pursuing relief under § 2255 . . . or because the petitioner has been denied permission to file a second or successive motion to vacate." *Charles*, 180 F.3d at 756 (internal citations omitted). Petitioner must also allege and prove that he is "actually innocent." *Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003); *Martin v. Perez*, 319 F.3d 799, 804 (6th Cir. 2003); *Peterman*, 249 F.3d at 461–62; *Charles*, 180 F.3d at 757.

The Sixth Circuit has derived its understanding of the definition of "actual innocence" from *Bousley v. United States*, 523 U.S. 614 (1998). *Martin*, 319 F.3d at 804. *Bousley* held that "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him . . . [and] that 'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. at 623–24 (internal quotation marks and citations omitted). One way to establish factual innocence is to show an "intervening change in the law that establishes [the petitioner's] actual innocence." *Peterman,* 249 F.3d at 462. This may be achieved by demonstrating (1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4)

applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him.

In this case, it is clear that the *Santos* decision issued a new interpretation of the term "proceeds" as "profits" in 18 U.S.C. § 1956 and overruled Sixth Circuit precedent defining "proceeds" as "gross receipts." *See United States v. Kratt*, 579 F.3d 558, 560 (6th Cir. 2009). It is also clear that Petitioner could not have raised *Santos* in his prior proceedings, which were complete in January 2008, because the *Santos* decision was not filed until June 2, 2008. The two major issues presented here are thus whether the rule in *Santos* is retroactive and whether it applies to the merits of the petition.

## 1.    Retroactivity

The Supreme Court did not discuss whether its holding in *Santos* was retroactive, and the Sixth Circuit has not yet ruled on this issue. In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court explained the exceptions to the general rule that new decisions are not retroactive, unless the new decision provides a criminal rule of procedure that is of "watershed" importance or is a substantive change in the law that imposes a new burden on the states or federal government. *Schriro v. Summerlin*, 542 U.S. 348, 353–58 (2004); *Saffle v. Parks*, 494 U.S. 484, 494–95 (1990); *Duncan v. United States*, 552 F.3d 442, 444 (6th Cir. 2009); *Goode v. United States*, 305 F.3d 378, 383 (6th Cir. 2002).

Immediately following *Santos*, many district courts concluded that the new definition of "proceeds" was not of "watershed" importance and therefore held that *Santos* was not retroactively applicable. *See, e.g.*, *Haukedahl v. United States*, No. 3:07-CR-64, 2009 U.S. Dist. LEXIS 29409, at *6 (N.D. Ohio Apr. 7, 2009) ("*Santos* has no retroactive application. . . . [It] did not announce a new constitutional rule of watershed importance."). The district court below cited a number of district court decisions that refused to apply *Santos* retroactively. It found that *Santos* was not retroactive "[b]ased upon the great weight of this authority." *Wooten v. Cauley*, No. 09-CV-67, 2009 U.S. Dist. LEXIS 106921, at *14–15 (E.D. Ky. Nov. 16, 2009).

However, since the district court issued its decision, several circuit courts have ruled that *Santos* is retroactively applicable because the new interpretation of the definition of "proceeds" in § 1956 is a substantive change in the law and places the burden on the prosecution to prove the use of profits, not mere gross receipts, in money laundering cases. *See United States v. Halstead*, 634 F.3d 270, 271 (4th Cir. 2011) (holding that "*Santos* does apply retroactively on collateral review"); *Garland v. Roy*, 615 F.3d 391, 396 (5th Cir. 2010) ("[O]ur case law establishes that new decisions interpreting federal statutes that substantively define criminal offenses automatically apply retroactively and *Santos* is an exemplar of such a decision."); *King v. Keller*, 372 F. App'x 70, 73 (11th Cir. 2010) ("The *Santos* opinion clearly construed a substantive federal criminal statute, because it defined the meaning of one of the terms included in § 1956."). In at least one instance, the government has conceded that *Santos* applies retroactively, "because it sets forth a substantive rule that conceivably narrows the scope of the federal money-laundering statute." *Santana v. United States*, No. 08-1493-JLR, 2009 U.S. Dist. LEXIS 71629, at *4 n.2 (W.D. Wash. Feb. 4, 2009).

Because the new definition of a key phrase in the money laundering statute is a substantive change of law and increases the government's burden of proof, we agree with the Fourth, Fifth, and Eleventh Circuits in holding that *Santos* is retroactive.

## 2.     Application to Petitioner's Conviction

Petitioner argues that the *Santos* definition of "proceeds" as "profits" applies to him, and, because the government only proved Petitioner's use of "gross receipts" and not "profits" to further his scheme, his money laundering conviction cannot stand.

In *Santos*, the Supreme Court was faced with the question of whether "proceeds" in 18 U.S.C. § 1956 should be defined as "profits" or "gross receipts" in the context of a defendant convicted of running an illegal gambling and lottery business in violation of 18 U.S.C. § 1955 and of money laundering under § 1956.[1]  553 U.S. at 509.  The

---

[1]Congress overruled *Santos* in 2009 when it amended 18 U.S.C. § 1956 to define "proceeds" as "gross receipts" in all contexts. *See* 18 U.S.C. § 1956(c)(9) ("[T]he term 'proceeds' means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity,

Court was concerned that "[i]f 'proceeds' meant 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." *Id.* at 515. The act of running a lottery and gambling enterprise not only violated the prohibition on illegal gambling businesses under 18 U.S.C. § 1955, but that act alone was also sufficient to constitute a violation of the money laundering statute, 18 U.S.C. § 1956. *Id.* at 516. The Court found "no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime" by also punishing it under § 1956. *Id.* at 517. Using the same conduct, without more, to violate two statutes created a "merger problem" and was tantamount to double jeopardy. *See id.* at 516. Invoking the "profits" definition, however, solved the merger problem because "[t]ransactions that normally occur during the course of running a lottery are not identifiable uses of profits." *Id.* at 517. The Court thus found that "proceeds" meant "profits" when the predicate crime was a violation of § 1955.[2]

Justice Stevens also indicated that "proceeds" means "profits" in other circumstances where (1) the predicate offense merges with the money laundering offense, (2) the money laundering conviction drastically increases the defendant's sentence, and (3) the legislative history is silent as to the definition of "proceeds" in relation to the predicate crime. *Santos*, 553 U.S. at 527–28 (Stevens, J., concurring); *Cosgrove*, 637 F.3d at 654–55; *United States v. Smith*, 601 F.3d 530, 544 (6th Cir. 2010); *Kratt*, 579 F.3d at 562.

---

including the gross receipts of such activity."). However, because the legislative amendment does not apply retroactively, it does not affect the analysis here. *United States v. Moreland*, 622 F.3d 1147, 1163 n.4 (9th Cir. 2010).

    [2]The Court split 4–4 on whether to define "proceeds" as "profits" or "gross receipts." In his concurrence, Justice Stevens agreed with the plurality that "proceeds" meant "profits," but he limited his decision to cases involving lottery and gambling business transactions and other in instances of merger. Because the concurrence provided the narrowest rule for which a majority agreed, Justice Steven's limited decision provides the majority holding. *See Marks v. United States*, 430 U.S. 188, 193 (1977).

In *Kratt*, this Court adopted Justice Stevens' concerns about merger where the same conduct is sufficient to support a conviction of both a predicate crime and money laundering.  579 F.3d at 563.[3]  There, the Sixth Circuit found that the crimes of bank fraud and making false statements merge with the crime of money laundering "because nearly every consummated bank fraud and false statement offense involves depositing, withdrawing, transferring or exchanging funds derived from the offense," acts that are also sufficient to prove money laundering.  *Id.*  "Under the *Santos-Kratt* framework, a merger problem arises when defining 'proceeds' as 'receipts' automatically makes commission of the predicate offense a commission of money laundering and where the predicate offense carries a much lower statutory maximum sentence than the associated money laundering charge."  *Cosgrove*, 637 F.3d at 655 (citing *Kratt*, 579 F.3d at 563). In *Cosgrove*, this Court found that the crimes of money laundering and mail/wire fraud merged, because the defendant's act of receiving payments for his services as an attorney and claims adjuster offering fraudulent insurance was sufficient to prove both money laundering and mail/wire fraud.  *Cosgrove*, 637 F.3d at 655 (emphasizing that the act of receiving payments in violation of the mail/wire fraud statutes could also support a violation of the money laundering statute "without any additional action by Cosgrove").

Other circuits have also followed this basic merger inquiry.  *See United States v. Bush*, 626 F.3d 527, 535 (9th Cir. 2010) (merger exists in the peculiar case where a person who commits one crime would necessarily and simultaneously commit money laundering); *United States v. Brown*, 553 F.3d 768, 783 (5th Cir. 2008) (merger exists where committing a predicate crime "would almost always support money laundering charged without requiring proof of any distinct laundering activities"); *United States v. Payton*, 437 F. App'x 241, 243 (4th Cir. 2011) (per curiam) (no merger exists where "[a]n actual financial transaction is not an element of" the predicate crime).

Turning to the case at bar, unlike the defendants in *Santos*, *Kratt*, and *Cosgrove*, Petitioner's act of transporting the stolen car parts to Alabama and California is

---

[3]The Sixth Circuit has also taken a "*defendant-unfriendly* approach" to determining when offenses merge with money laundering.  *Kratt*, 579 F.3d at 563 (suggesting that the resolution of the definition of "proceeds" requires an offense-by-offense inquiry).

sufficient to prove a violation of § 2314 but is not sufficient to prove a violation of the money laundering statute of § 1956.**4**

Petitioner was convicted of interstate transportation of stolen goods under § 2314, which provides:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods . . . of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . [s]hall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 2314.

Petitioner's money laundering scheme violated § 1956, which provides:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(i).

The facts and elements of proof necessary to support a conviction for interstate transportation of stolen goods do not include the threshold requirement for proving money laundering, i.e., the existence of a financial transaction. *See, e.g.*, *Payton*, 437 F. App'x at 243. Although Petitioner was also engaged in the buying and selling of stolen goods, which does involve a financial transaction, his crime of transporting stolen goods across state lines in violation of § 2314 did not require it.**5**

---

**4**On appeal, Petitioner argues only that his money laundering and interstate transportation of stolen goods convictions merge. He does not argue that his convictions for aiding and abetting and structuring financial transactions merge with money laundering.

**5**Petitioner also argues that paying for the transportation of the goods was an "expense" of his scheme to buy and sell stolen goods, so his situation is analogous to that in *Santos* and his crimes should merge. In *Santos*, the defendant's act of paying the lottery winnings (an "expense" of running the lottery business) was sufficient to support a violation of both statutes. But, in Petitioner's case, the act of paying the cost of shipping the stolen goods may violate § 2314, but it does not violate § 1956 because the

Importantly, the convictions here do not implicate the *Santos* Court's concern about merger; even if the definition of "proceeds" was "gross receipts," a violation of § 2314 interstate transportation of stolen goods would not automatically and necessarily be a violation of § 1956(a)(1)(A)(i) money laundering. *See Santos*, 552 U.S. at 515–16; *Cosgrove*, 637 F.3d at 655; *Kratt*, 579 F.3d at 561–63. Petitioner's act of using proceeds from the sale of stolen car parts to purchase more stolen car parts is independent of his act of transporting stolen air bags to Alabama and California. Petitioner's convictions for interstate transportation of stolen goods and money laundering are not tantamount to double jeopardy, and the crimes do not merge.

Petitioner is unable to demonstrate his actual innocence through *Santos*, because its definition of "proceeds," on which he bases his innocence, does not apply to the circumstances of his case. Petitioner has not offered any other basis upon which he can prove his actual innocence. Because Petitioner has not proven his "actual innocence," he does not fall within the savings clause of § 2255. This Court does not have jurisdiction to grant him § 2241 habeas relief.

## CONCLUSION

For the reasons discussed above, the judgment of the district court denying the petition for habeas corpus relief is **AFFIRMED.**

---

government would still have to prove that the money used to pay for the shipment originated from an unlawful financial transaction.

---

### CONCURRING IN THE RESULT

---

HELENE N. WHITE, Circuit Judge, concurring. Although I concur in the result, I write separately because I am not convinced under the facts of this case that the lack of congruity in the elements of the money-laundering and transportation-of- stolen-goods offenses eliminates the merger problem where the proceeds underlying the money-laundering count were used to buy the stolen goods transported in interstate commerce. *See, e.g., United States v. Santos*, 553 U.S. 507, 516 (2008) (noting that merger problem exists for multiple predicate offenses because "[g]enerally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering."); *United States v. Halstead,* 634 F.3d 270, 279 (4th Cir. 2011) (merger problem exists "when the illegal activity includes money transactions to pay for the costs of the illegal activity . . . [and] the government uses those transactions also to prosecute the defendant for money laundering."); *United States v. Moreland*, 622 F.3d 1147, 1166 (9th Cir. 2010) (merger problem exists where money laundering charge based on commission payments to Ponzi scheme operators because such commissions were "central to carrying out the scheme's objective of encouraging further investment"); *United States v. Lee*, 558 F.3d 638, 642 (7th Cir. 2009) (using rule that "when the crime entails voluntary, business-like operations, 'proceeds' must be net income; otherwise the predicate crime merges into money laundering (for no business can be carried on without expenses)" to find that rent and utility payments for illegal brothel were not "proceeds" within meaning of 18 U.S.C. § 1956(a)).

Nonetheless, I concur because Petitioner has not demonstrated  the actual innocence  required to prevail on his § 2241 petition. The proofs at trial showed that Beck's Wheels sold stolen airbags to buyers in California and Alabama at a profit, that the sale proceeds were deposited into a business account, and that those proceeds were subsequently withdrawn by Petitioner and his employees to pay for more stolen airbags.

Accordingly, I agree that the district court's denial of Petitioner's § 2241 petition should be AFFIRMED.