NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0597n.06

No. 15-4219

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 08, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ABRAR U. HAQUE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE** |
| WARDEN, FEDERAL CORRECTIONAL | ) | **NORTHERN DISTRICT OF** |
| INSTITUTE ELKTON, | ) | **OHIO** |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: GILMAN, GIBBONS, and STRANCH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Abrar Haque appeals the denial of his petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. Following a jury trial, Haque was convicted of sixty-one charges including RICO conspiracy, conspiracy to launder money, money laundering, wire fraud, bank fraud, healthcare fraud, interstate transportation of property taken by fraud, and making false statements to federal officers. Haque argues that he is entitled to § 2241 *habeas* relief because he is actually innocent of his money-laundering convictions under *United States v. Crosgrove*, 637 F.3d 646 (6th Cir. 2011), which in turn relied on *United States v. Santos*, 553 U.S. 507 (2008), and *United States v. Kratt*, 579 F.3d 558 (6th Cir. 2009). For the reasons that follow, we affirm the district court's denial of *habeas* relief.

I.

A.

Abrar Haque owned and operated Abrar CPA, Inc., an accounting firm where Haque and others worked as certified public accountants. In 2003, the FBI began investigating Haque after an informant reported that the firm was producing false tax documents. After the FBI substantiated the claims, it had Mohammed Abdelqader, a cooperating witness, approach Haque for help laundering allegedly off-the-books cash. Between December 2003 and August 2004, Abdelqader and Haque engaged in four cash-for-check transactions. Abdelqader gave Haque $330,000 in cash in exchange for $300,000 in checks. Haque kept $30,000 as a commission for the transactions. Although the cash was provided by the FBI, Abdelqader told Haque it came from the sale of contraband cigarettes in North Carolina.

B.

Haque and fourteen co-conspirators were indicted by a federal grand jury on February 1, 2006, in a seventy-nine-count superseding indictment. Haque was charged with RICO conspiracy, conspiracy to defraud the United States, making and subscribing false income tax returns for individuals, schools, and his firm, conspiracy to launder money, money laundering, fraudulent misuse of visas, wire fraud, mail fraud, bank fraud, healthcare fraud, interstate transportation of property taken by fraud, and making false statements to a federal officer. Only Counts 4, 5, and 6 of the Superseding Indictment are at issue in this appeal. Each is a substantive charge of money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B), for Haque's check-for-cash exchanges with Abdelqader. The predicate activity for these money-laundering counts was Abdelqader's representation (as an FBI cooperating witness) that he had engaged in the interstate

transportation of stolen property (cash from the alleged sale of contraband cigarettes), in violation of 18 U.S.C. § 2314.[1]

Haque was convicted on sixty-one of the seventy-nine counts, including the substantive money-laundering charges in Counts 4, 5, and 6. He was sentenced to a term of 144-months' imprisonment. We affirmed Haque's conviction on direct appeal, *United States v. Haque*, 315 F. App'x 510, 516 (6th Cir. 2009), and the Supreme Court denied a petition for a writ of certiorari. *Haque v. United States*, 558 U.S. 831 (2009). In 2010, Haque filed his first motion under 28 U.S.C. § 2255. There, Haque argued that he was innocent of the money-laundering convictions because of intervening decisions in *United States v. Santos*, 553 U.S. 507 (2008), and *United States v. Kratt*, 579 F.3d 558 (6th Cir. 2009). The district court denied his § 2255 motion, finding no basis under *Santos* and *Kratt* to overturn Haque's money-laundering convictions. *Haque v. United States*, No. 05-cr-182, 2011 WL 737319 (N.D. Ohio Feb. 24, 2011). We denied a certificate of appealability, finding that "reasonable jurists could not debate" the correctness of the ruling that *Kratt* and *Santos* did not apply to Haque's convictions. *Haque v. United States*, No. 11-3617 (6th Cir. Nov. 3, 2011) (unpublished order). In 2013, Haque petitioned to file a second § 2255 motion, arguing ineffective assistance of trial counsel under the then-recent decisions in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012). We denied his petition because neither decision constituted a new rule of constitutional law made retroactive on collateral review by the Supreme Court. *See* 28 U.S.C. § 2255(h).

On May 15, 2015, Haque filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241. Haque now argues that he is actually innocent of his money-laundering conviction under

---

[1] Haque was not indicted under 28 U.S.C. § 2314 for transporting this purportedly stolen cash. The only § 2314 charge against him—in Count 17 of the Superseding Indictment—involved a fraudulent $10,000 loan from Citifinancial, an activity which is unrelated to the money-laundering convictions at issue in this appeal.

*United States v. Crosgrove*, 637 F.3d 646 (6th Cir. 2011), a decision relying on both *Santos* and

*Kratt*. The district court denied Haque's petition on September 9, 2015, finding that he was not

entitled to file under § 2241 because § 2255 was the proper avenue for relief. The district court

determined that the exception under § 2255(e), which would allow Haque to pursue relief under

§ 2241, did not apply because § 2255 was not "inadequate or ineffective" under *Terrell v. United*

*States*, 564 F.3d 442, 447 (6th Cir. 2009). The district court further recognized that Haque had

been able to challenge his money-laundering conviction on the basis of *Santos* and *Kratt* in a

prior § 2255 petition. Haque filed a timely notice of appeal.

II.

This Court reviews *de novo* a district court's order denying *habeas corpus* relief under

28 U.S.C. § 2241. *Christian v. Willington*, 739 F.3d 294, 298 (6th Cir. 2014) (citing *Fazzini v.*

*Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)); *Rosales-Garcia v. Holland*, 322 F.3d

386, 400–01 (6th Cir. 2003) (*en banc*).

"Section 2255 is the primary avenue for relief for federal prisoners protesting the legality

of their sentence, while § 2241 is appropriate for claims challenging the execution or manner in

which the sentence is served." *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001).

A federal prisoner can attack the legality of his conviction under § 2241 only by showing that the

§ 2255 savings clause applies. *Id.* The savings clause states:

> An application for a writ of habeas corpus in behalf of a prisoner who is
> authorized to apply for relief by motion pursuant to this section, shall not be
> entertained if it appears that the applicant has failed to apply for relief, by motion,
> to the court which sentenced him, or that such court has denied him relief, unless
> it also appears that the remedy by motion is *inadequate or ineffective* to test the
> legality of his detention.

28 U.S.C. § 2255(e) (emphasis added); *Wooten v. Cauley*, 677 F.3d 303, 307 (6th Cir. 2012);

*Charles v. Chandler*, 180 F.3d 753, 755–56 (6th Cir. 1999).

"The circumstances in which § 2255 is inadequate and ineffective are narrow, for to construe § 2241 relief much more liberally than § 2255 relief would defeat the purpose of the restrictions Congress placed on the filing of successive petitions for collateral relief." *Peterman*, 249 F.3d at 461 (citing the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (amending 28 U.S.C. § 2255)). Section 2255 is not inadequate or ineffective merely "because § 2255 relief has already been denied, . . . because the petitioner is procedurally barred from pursuing relief under § 2255, . . . or because the petitioner has been denied permission to file a second or successive [§ 2255 motion]." *Charles*, 180 F.3d at 756 (internal citations omitted); *see also Wooten*, 677 F.3d at 307; *Peterman*, 249 F.3d at 461.

We apply the § 2255(e) savings clause only where the petitioner demonstrates a claim of actual innocence that would be barred if brought by way of a second or successive § 2255 petition. *Wooten*, 677 F.3d at 307; *Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003). One way to succeed on a claim of actual innocence is to show "(1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him." *Wooten*, 677 F.3d at 307–08.

Assuming for present purposes that Haque's petition would not be cognizable as a second or successive § 2255 petition, we proceed to consider whether Haque has met his burden to show actual innocence. Haque asserts that *United States v. Crosgrove*, 637 F.3d 646 (6th Cir. 2011), is sufficient to show that he is actually innocent of the money-laundering convictions and thus eligible for § 2241 relief. His argument fails because *Crosgrove* does not apply to the merits of

his petition. And even if it did apply, Haque cannot show actual innocence because *Crosgrove* does not constitute a new interpretation of statutory law.

A.

To make out a claim of actual innocence, Haque must show that *Crosgrove* applies to the merits of his petition such that it becomes "more likely than not that no reasonable juror would have convicted him." *Wooten*, 677 F.3d at 307–08. The *Santos-Kratt* framework as applied in *Crosgrove*, however, does not apply to Haque.

In *United States v. Santos*, 553 U.S. 507 (2008), the Supreme Court reviewed convictions for running an illegal gambling business, in violation of 18 U.S.C. § 371 and § 1955, as well as promotional money laundering and conspiracy to commit promotional money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and § 1956(h). *Santos*, 553 U.S. at 509. This "promotional" theory of money laundering prohibits an individual from reinvesting the proceeds of an illegal scheme back into that scheme in an attempt to promote, or sustain, the illegal activity in which he is involved. *See Crosgrove*, 637 F.3d at 654.

The *Santos* defendants were directly involved in running an illegal lottery at bars and restaurants in Indiana. *Santos*, 553 U.S. at 509. In doing so, they made payments to the lottery winners and kept any profits to themselves. *Id.* Although it was a divided decision, a majority of the Court concluded that in this context, interpreting "proceeds" in § 1956(a)(1) as "gross receipts" would create a merger problem because the payments to lottery winners would be sufficient to support both illegal-gambling and promotional money-laundering convictions.[2] *Id.*

---

[2] "Merger" has been described in the criminal-law context as "[t]he absorbtion of a lesser included offense into a more serious offense when a person is charged with both crimes, so that the person is not subject to double jeopardy." *Black's Law Dictionary* 1078 (9th ed. 2009). *Santos* was the first time that the Court applied the concept of a "merger problem" to money-laundering convictions. The divided Court noted multiple justifications for applying such a concept. Writing for a plurality of the Court, Justice Scalia identified the concerns that prosecutors could use the money-laundering statute to ratchet up a defendant's potential sentence and that the government had provided "no explanation for why Congress would have wanted a [monetary] transaction that is a normal part of a

at 515–16. Because every lottery involves paying winners, "nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute." *Id.* at 515. If "proceeds" were interpreted to mean "profits," then § 1956(a)(1) would apply to the defendants only if they chose to reinvest their profits back into the illegal lottery. *Id.* at 515–16. Such an interpretation avoided a merger problem because reinvesting profits was activity separate and apart from that punished by the illegal gambling statute. *Id.*

We first addressed the Supreme Court's divided decision in *Santos*, interpreting the use of "proceeds" in 18 U.S.C. § 1956, the federal money-laundering statute, in *United States v. Kratt*, 579 F.3d 558 (6th Cir. 2009). Kratt was convicted of bank fraud and making a false statement on a loan application for financing the purchase of an airplane by providing fraudulent tax returns to his bank. *Kratt*, 579 F.3d at 559. These convictions served as predicate offenses for three counts of engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957.[3] *Id.* Like the *Santos* defendants, Kratt was directly involved in the predicate offense. *Id.* We held that *Santos* required us to define "proceeds" as "profits" and not simply as "gross receipts" in limited cases where the predicate offense to the money-laundering charge "creates a merger problem that leads to a radical increase in the statutory maximum sentence," and "nothing in the legislative history suggests Congress intended such an increase." *Kratt*, 579 F.3d at 562. We found a clear merger problem in Kratt's case because the bank-fraud and false-statement offenses necessarily required "depositing, withdrawing, transferring or

---

crime it had duly considered and appropriately punished elsewhere . . . to radically increase the sentence for that crime." *Santos*, 553 U.S. at 516. In a concurring opinion, Justice Stevens also expressed the concern that the practice of charging both a predicate offense and money laundering for the same conduct was "in practical effect tantamount to double jeopardy." *Id.* at 527–28 (Stevens, J., concurring in the judgment).

[3] In *Kratt*, we determined that "proceeds" as used in § 1957 should be interpreted under the merger framework established in *Santos* for § 1956(a) because Congress enacted both statutes at the same time as part of the same Act. *Kratt*, 579 F.3d at 560.

exchanging funds derived from the offense." *Id.* at 563. This was the same conduct for which Kratt was convicted under § 1957. *Id.* at 563.

In *Crosgrove*, we applied this *Santos-Kratt* framework to invalidate a promotional money-laundering conviction under § 1956(a)(1). *Crosgrove*, 637 F.3d at 654. Crosgrove was convicted of conspiracy to commit mail/wire fraud and promotional money laundering for his involvement in a fraudulent insurance scheme. *Id.* at 650. Underlying this fraud conviction was the fact that Crosgrove had regularly written himself checks from accounts funded by client fees received in the course of the fraudulent scheme. *Id.* at 651. Crosgrove reinvested these payments back into the insurance scheme. *Id.* at 654. We first clarified that a merger problem exists when interpreting "proceeds" as "gross receipts" under the money-laundering statute creates a situation where a single course of conduct by a defendant triggers criminal liability for both a predicate offense (such as wire fraud) and money laundering. *Id.* at 655. In such cases, the concern is that, because the predicate offense carries a significantly lower statutory maximum sentence, the ability to charge money laundering for the same conduct will significantly increase a defendant's "exposure to prison time." *Id.* We found that the conspiracy to commit mail/wire fraud and promotional money-laundering charges merged because the underlying activity—Crosgrove mailing payments to himself—was sufficient to support both a fraud and promotional money-laundering conviction when "proceeds" were defined as "gross receipts." *Id.* at 655 (citing *Kratt*, 579 F.3d at 563).

Haque, by contrast, was convicted under a "sting" theory of money laundering, in violation of § 1956(a)(3)(B). This provision punishes anyone who "conducts . . . a financial transaction involving property represented to be the proceeds of specified unlawful activity" while acting with intent "to conceal or disguise the nature, location, source, ownership, or control

of property believed to be the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(3)(B). Although the defendant is led to believe that the funds to be laundered are the proceeds of unlawful activity, the funds are not actually illegal gains. *See United States v. Monea*, 376 F. App'x 531, 536–37 (6th Cir. 2010). In sting cases, in other words, the predicate unlawful activity is only alleged. There is no requirement that it occurred. And when a defendant is not engaged in an underlying unlawful scheme, there cannot be a merger problem because there is no other offense that can be charged.

The availability of relief, then, turns on whether Haque was involved in and charged with unlawful activity that merged with his money-laundering conviction. Unlike the *Santos*, *Kratt*, and *Crosgrove* defendants, Haque was not engaged in, charged with, or convicted of illegal activity constituting a predicate offense. Because the cash-for-check exchanges with Abdelqader were organized by the FBI, there was no actual unlawful predicate activity in which Haque could have been involved. As a result of his involvement in these exchanges, Haque was charged with and convicted of only the substantive counts of money laundering. This distinguishes his case from *Santos*, *Kratt*, and *Crosgrove*, where the defendants were convicted of money laundering in an attempt to promote an underlying scheme in which they were directly involved. *Santos*, 553 U.S. at 509; *Kratt*, 579 F.3d at 559; *Crosgrove*, 637 F.3d at 650–51.

Accordingly, we conclude that there cannot be a *Santos-Kratt* merger problem with respect to Haque's sting money-laundering conviction under § 1956(a)(3) because there was no predicate offense with which the money-laundering conviction could merge.[4] This is consistent

---

[4] The Fifth Circuit has reached a similar conclusion, finding more broadly that no merger problem exists when a defendant is not charged with the predicate offense underlying the money-laundering conviction. *See United States v. Lineberry*, 702 F.3d 210, 218 (5th Cir. 2012), cert. denied, 133 S. Ct. 2839 (2013) (finding "no 'perverse result' of the merger problem as contemplated by Santos" because the defendant was not charged with the "underlying unlawful activity"). As that court recognized, such cases avoid any problem of double jeopardy—the primary concern associated with the merger problem—because the defendant is charged with only one crime. *Id.* (citing Black's Law Dictionary 1078 (9th ed. 2009)).

with our prior decisions that instruct us to not overstate the merger problem described in *Santos*, *see Wooten*, 677 F.3d at 311, and to narrowly construe the availability of § 2241 relief. *Peterman*, 249 F.3d at 461. Without a merger problem in the present case, *Crosgrove* provides no support for Haque's argument that he is actually innocent. For this reason, we must affirm the district court's order dismissing Haque's petition for *habeas corpus* under § 2241.

B.

Even if we were to assume that a sting money-laundering conviction under § 1956(a)(3) could create a *Santos-Kratt* merger problem making *Crosgrove* applicable, Haque still cannot show actual innocence as required to invoke the § 2255(e) savings clause because *Crosgrove*, by its own language, is not a new interpretation of existing statutory law.

Crosgrove was convicted of mail fraud and conspiracy to commit promotional money laundering under 18 U.S.C. § 1956(a)(1). *Crosgrove*, 637 F.3d at 650. The government alleged that Crosgrove was engaged in insurance fraud and was reinvesting the proceeds to further promote the fraudulent scheme. *Id.* at 654. The government conceded that the only basis for the money-laundering charge were payments to Crosgrove for his participation in the underlying scheme. *Id.* at 655. Crosgrove challenged his conviction, arguing that these payments were insufficient to prove money laundering because the government was required to prove that he received and reinvested profits. *Id.* at 658. We held that Crosgrove's mail-fraud conviction created a merger problem with the money-laundering charge that led to a radical increase in the statutory maximum sentence. *Crosgrove*, 637 F.3d at 654–55 (citing *Kratt*, 579 F.3d at 562). Because the government was required to prove that Crosgrove had laundered profits of the scheme, but failed to do so, we vacated his conviction for conspiracy to commit money laundering. *Id.*

Haque reads *Crosgrove* to "clarify[] what a court must consider" when determining whether the predicate offense for money laundering creates a merger problem. CA6 R. 19, Corrected Appellant Br., at 9–10. He asserts that the *Crosgrove* court "made clear" that using a categorical approach to determine whether there was a merger problem is not required and, therefore, courts must now assess "the specific facts giving rise to the predicate offense." *Id.* at 5–6. Haque believes this "materially altered [the] *Kratt* rule and clarified that an 'offense-by-offense inquiry' was not part of the [test under *Kratt*.]" *Id.* at 9.

Haque is overstating the implications of *Crosgrove*. In that case, we simply recognized and applied the test established in *Santos* and *Kratt*. *Crosgrove*, 637 F.3d at 654–55. After discussing different ways to approach the problem of determining whether the predicate crimes merged, we clarified, "[i]t is not necessary to decide in this case whether the merger analysis requires a case-by-case or categorical approach, however, because the crimes as charged obviously merge." *Id.* at 655. Because this clearly does not establish a new test within the *Santos-Kratt* framework, we concluded that *Crosgrove* is not a new rule of statutory interpretation. This further supports our finding that Haque is precluded from invoking the § 2255(e) savings clause to seek § 2241 *habeas* relief.

## III.

For the foregoing reasons, we affirm the district court's denial of *habeas* relief.