NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0674n.06

No. 10-3305

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**_Jun 26, 2012_**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTHONY BALTIMORE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE: BOGGS and GRIFFIN, Circuit Judges; and BARZILAY, Judge.[*]

GRIFFIN, Circuit Judge.

After a lengthy trial, a jury found defendant Anthony Baltimore guilty of conspiracy to distribute drugs, possession of a firearm in relation to a drug-trafficking offense, conspiracy to launder money, and engaging in a continuing criminal enterprise. On appeal, he challenges two of the district court's pre-trial orders, as well as the sufficiency of the evidence on two of his convictions. He also challenges his drug-conspiracy conviction on double-jeopardy grounds. We vacate Baltimore's conviction for drug conspiracy and affirm in all other respects.

I.

The government indicted Baltimore in October 2007 on counts of conspiracy to distribute various drugs, in violation of 21 U.S.C. §§ 841(a)(1) and 846, money laundering, in violation of 18

---

[*]The Honorable Judith M. Barzilay, Senior Judge for the United States Court of International Trade, sitting by designation.

U.S.C. § 1956(a)(1)(B)(i), and possession of a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (2). The grand jury issued two superseding indictments, adding counts for conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h), and engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a), (b)(1), and (b)(2)(A).

Baltimore moved to dismiss the indictment on grounds that the government waited too long to indict him, but the district court denied his motion. He moved also for a separate trial on the money-laundering conspiracy, claiming he would suffer prejudice at a trial involving all of the charges, but the district court denied that motion as well. After a five-week trial, a jury found Baltimore guilty of all the charges except money laundering, a charge based upon conduct separate from the conduct at issue in the alleged conspiracy to launder money.

The evidence offered at trial showed that from 1996 until the time of indictment, Baltimore conspired with others to buy and sell heroin, marijuana, and cocaine in southern Ohio and northern Kentucky. During this period, Baltimore purchased drugs from suppliers across the United States and distributed them to various individuals who would sell them on Baltimore's behalf.

The evidence showed further that, during the conspiracy, Baltimore operated various businesses through which he laundered drug proceeds. Two of these businesses were Prestige Auto Imports, LLC, a luxury car dealership, and Baltimore Properties, LLC, a property ownership and management company. Although both companies had purportedly legitimate aims, neither produced enough income to support itself, so Baltimore used drug proceeds to keep them afloat. In addition,

Baltimore involved himself in a mortgage-fraud scheme, whereby his grandmother would, with his assistance, purchase real property using financing obtained from various lending institutions based on falsely inflated home appraisals. The financing exceeded the property's purchase price, and Baltimore split the excess with others engaged in the scheme. He deposited some of his share of the proceeds into bank accounts associated with his businesses.

The district court entered judgment on the jury's verdict and sentenced Baltimore to life in prison and other punishments. Baltimore timely appealed.

II.

Baltimore contends first that the district court erred when it denied his motion under Federal Rule of Criminal Procedure 14 for a separate trial on the charge of conspiracy to launder money. According to Baltimore, "the government showed at best only the most tenuous connection between the extensive mortgage fraud scheme outlined in Count 4 of the Indictment and the other Counts," and he suffered prejudice at trial on the drug and gun charges due to the admission of "unrelated[] and highly inflammatory evidence" regarding the money-laundering conspiracy. The evidence offered to prove the latter offense, he maintains, called to mind the recent sub-prime mortgage crisis and would not have been offered and admitted in a trial that involved only the drug and gun charges.

The government correctly responds that Baltimore has not preserved this issue for appeal because he failed to renew his severance motion at the close of the evidence. *See United States v. Allen*, 160 F.3d 1096, 1106 (6th Cir. 1998) ("[F]ailure to renew a motion to sever at the close of evidence results in waiver of the motion."). In his reply brief, Baltimore acknowledges the defect

but seeks to recast his challenge as one relating to *misjoinder* of the counts under Federal Rule of Criminal Procedure 8, a challenge which need only be made before trial – which Baltimore says he did – to preserve for appeal. *See United States v. Chavis*, 296 F.3d 450, 457-58 (6th Cir. 2002). Baltimore's attempt to re-characterize his challenge on appeal is not well-taken.

Regardless of whether Baltimore is correct that his pre-trial motion in the district court properly raised challenges under both Rule 14 *and* Rule 8, *cf. United States v. Hatcher*, 680 F.2d 438, 441 (6th Cir. 1982) (generously interpreting the defendant's pre-trial motion for severance made under Rule 14 as one raising a challenge under Rule 8 as well); *but see id.* at 446 (Kennedy, J., dissenting) ("Rule 8(b) issues are not inherently before the trial court in Rule 14 motions."), on appeal he raises his Rule 8 challenge only in his reply brief, and we generally decline to reach issues raised only in reply briefs. *See United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001); *see also Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008) (noting that arguments not raised in an opening brief are forfeited).

In his opening brief, contending that the district court abused its discretion in not ordering separate trials, Baltimore focuses entirely on the *evidence offered at trial* and how he apparently was prejudiced by it, rather than on the correctness of joining the offenses *in the indictment*.[1] This

---

[1]To be sure, Baltimore does set out in his brief some law on Rule 8 and the appropriate standard of review. But that is insufficient by itself to trigger our review. *See United States v. Kelso*, No. 09-6536, 2012 WL 934024, at *6 (6th Cir. Mar. 20, 2012) (holding that the defendant waived a challenge to the district court's denial of his motion for a new trial based upon newly discovered evidence where he "merely set out the standard of review and the elements of the claim," but "did not argue or explain how that standard or those elements were satisfied in this case"); *Crozier*, 259 F.3d at 517 ("We will not allow Burton to argue insufficient evidence as to the 'possession of a

argument is clearly one under Rule 14, not Rule 8. Challenges under the two rules are distinct, and we cannot ignore their differences. *See United States v. Lloyd*, 10 F.3d 1197, 1214 (6th Cir. 1993) ("Although the remedy for misjoinder under Rule 8(b) and prejudicial joinder under Rule 14 is the same – severance and separate trials – the two rules are analytically and procedurally distinct."). For example, whether joinder of offenses is proper under Rule 8 is determined by reference solely to the allegations in the indictment, whereas whether separate trials should be ordered (or should have been ordered) under Rule 14 for properly joined offenses is determined by what is likely to happen (or actually does happen) at trial. *Chavis*, 296 F.3d at 456-57. That is why challenges under Rule 14 must be renewed at the close of the evidence (to see if the joinder prejudiced the defendant at trial), but challenges under Rule 8 need not be renewed. *Id.* at 457. Moreover, a district court has "no discretion on the question of severance" when offenses are misjoined, *id.* at 456, but whether to order separate trials (or a new trial) for properly joined offenses is entrusted to the court's discretion, *United States v. Atchley*, 474 F.3d 840, 852 (6th Cir. 2007). *See also Lloyd*, 10 F.3d at 1214-15. Because Baltimore raises the indictment's alleged Rule 8 defect only in his reply brief, the challenge is forfeited.[2]

---

firearm' charge in his reply brief, simply because he cited generally to 18 U.S.C. § 922 in his initial brief."); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation and internal quotation marks omitted)).

[2]But even if Baltimore had properly raised his Rule 8 challenge on appeal, we would reject it. Rule 8(a) permits a defendant to be charged in a single indictment with multiple offenses if the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). As stated

III.

Baltimore next contends that the district court erred when it denied his motion to dismiss the indictment on account of delay in indicting him.

"[T]he applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." *United States v. Marion*, 404 U.S. 307, 322 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)). It is not, however, the *only* guarantee. The Due Process Clause of the Fifth Amendment, too, "has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Where pre-indictment delay causes substantial prejudice to a defendant's right to a fair trial, and the delay was intentionally created by the government to gain a tactical advantage, the Due Process Clause requires dismissal of the

---

above, "[w]hether joinder [is] proper under Rule 8(a) is determined by the allegations on the face of the indictment." *Chavis*, 296 F.3d at 456-57. Here, the allegations demonstrate that the offense of conspiring to launder money was properly joined with the drug and gun offenses because all the offenses were alleged in the indictment to be connected with, or part of, a common scheme or plan. Count one charged a conspiracy to distribute drugs. One of the many alleged objects of that conspiracy was to launder drug proceeds by conducting financial transactions, operating business enterprises, buying property, and filing false tax returns to conceal and disguise the nature of the drug proceeds. Count four essentially charged this conspiratorial object as a separate conspiracy. One object of this conspiracy was to deposit cash derived from drug dealing into bank accounts of ostensibly legitimate businesses in an attempt to make the funds appear legitimate, and two of the overt acts alleged in count four involved precisely that. In sum, the indictment properly joined count four with counts one through three because all the counts constituted various parts of a common scheme or plan to sell drugs and launder the proceeds. In his reply brief, Baltimore ignores the indictment's allegations and focuses instead on the evidence offered at trial, despite the irrelevance of considering trial evidence in a challenge under Rule 8. *See id.* at 457 ("Because the propriety of a Rule 8 joinder is determined solely by the initial allegations of the indictment, there is no need to assess what actually happened in the trial." (quoting *United States v. Terry*, 911 F.2d 272, 277 (9th Cir. 1990))).

indictment. *Id.* at 795 & n.17; *Marion*, 404 U.S. at 324; *see also United States v. Gouveia*, 467 U.S. 180, 192 (1984). Because a defendant must meet both parts of the test to warrant dismissal of the indictment, we need only address one part if the defendant's showing on that part is not sufficient. *See United States v. Greene*, 737 F.2d 572, 574-75 (6th Cir. 1984). A defendant bears a heavy burden on such claims. *See United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997) (noting that "[t]he standard for pre-indictment delay is nearly insurmountable").

We review the district court's factual findings regarding the government's intent and the resulting prejudice to the defendant for clear error. The ultimate decision whether to dismiss the indictment is reviewed for an abuse of discretion. *United States v. Scott*, 579 F.2d 1013, 1014 (6th Cir. 1978); *see also United States v. McDougle*, 82 F. App'x 153, 158 (6th Cir. 2003).

Here, there was indeed a lengthy delay by the government in charging Baltimore. As the district court noted, much of the conduct alleged in the indictment occurred more than five years before the initial indictment was returned, and other conduct occurred almost five years before indictment.[3] But the relevant question is not whether there was delay, but rather whether the government intentionally delayed for the purpose of gaining a tactical advantage and whether Baltimore suffered substantial prejudice as a result.

---

[3]Each count in the indictment is subject to a five-year statute of limitations. *See* 18 U.S.C. § 3282. For conspiracy offenses, the period begins on "the date of the last overt act in furtherance of the conspiracy alleged in the indictment." *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999). Baltimore does not contend that any of the counts are time-barred.

The district court concluded that the delay in this case was caused by the continued investigation of Baltimore, not in order to gain an advantage. According to the government, the Drug Enforcement Agency continued to investigate Baltimore up to the time of indictment. Grand jury proceedings continued until that time as well, as witnesses were located and their cooperation secured. The district court was permitted to rely upon the government's representations, *see Lovasco*, 431 U.S. at 796; *Rogers*, 118 F.3d at 476-77, and we cannot say that its finding is clearly erroneous. Delay caused by continued investigation cannot give rise to a deprivation of due process. *Lovasco*, 431 U.S. at 796.

Resisting this result, Baltimore asks us to conclude that the government's offered reason for its delay – continued investigation of the offenses – is a pretext for its deliberate decision to delay indicting him until his grandmother, whose testimony Baltimore contends was material to his defense to conspiracy to launder money, had died.[4] He points to a complaint the government filed against him in a related civil forfeiture action forty-seven months before he was indicted. That complaint was supported by a case agent's affidavit of probable cause that contained allegations Baltimore contends were materially similar to those contained in the indictment. But even assuming a similarity between the statements in the affidavit and the allegations in the indictment, the government was not constitutionally required to indict Baltimore once it had what it believed was

---

[4]Baltimore states that his grandmother would have testified that she purchased real estate on her own volition and was not "used" by Baltimore for the purpose of laundering money. It is unclear how this testimony would have supported a defense on the charge, especially because the government's theory on this charge involved primarily Baltimore's bank deposits of kickbacks and drug proceeds, not the home purchases themselves.

enough evidence to succeed in the civil action. The Supreme Court in *Lovasco* expressly rejected the claim that the government must indict once it "has assembled sufficient evidence to prove guilt beyond a reasonable doubt," 431 U.S. at 792, a standard of proof well more demanding than the preponderance-of-the-evidence standard the government must meet in forfeiture proceedings, *see* 18 U.S.C. § 983(c)(1). If the government is not constitutionally required to indict once it has sufficient evidence to prove its case beyond a reasonable doubt, it certainly is not required to do so once it has evidence to prove its case by a preponderance of the evidence.

Baltimore has offered nothing to rebut the government's assertion – and the district court's finding – that the government continued to investigate and build its case until indictment. Because he cannot show that the government delayed indicting him to gain a tactical advantage, we reject his due process claim.

IV.

Finally, Baltimore contends that insufficient evidence supports his convictions for conspiracy to launder money and engaging in a continuing criminal enterprise. When reviewing the sufficiency of the evidence in support of a jury verdict, we view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). We do not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009) (citation and internal quotation marks omitted).

A.

Baltimore first challenges his conviction for conspiracy to launder money. To convict on this charge, the government had to prove that Baltimore "agreed with another person to violate the substantive provisions of the money-laundering statute during the period alleged in the indictment." *See United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006). The elements of concealment money laundering are: (1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conducting or attempting to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership, or control of the proceeds. *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000); 18 U.S.C. § 1956(a)(1)(B)(i); *see also United States v. Warshak*, 631 F.3d 266, 319-20 (6th Cir. 2010).

Baltimore does not challenge the agreement aspect of the conspiracy conviction. Rather, he contends that there was insufficient evidence on the first and third elements of the money-laundering offense he allegedly conspired to commit. As he sees it, "the government's proof on money laundering failed since its own proof established that Baltimore put up none of his own money to acquire the properties outlined in Count 4, thus the government failed to establish that Baltimore used any funds that are the proceeds of unlawful activity." Furthermore, Baltimore maintains, the evidence also established that the purchases were made in Baltimore's grandmother's name not to disguise the nature of the illegal proceeds, but because she had the highest credit score and could secure the most financing. Baltimore is correct regarding a lack of evidence that he used any of his

own money to purchase real estate. He is also correct regarding the reason the property was purchased in his grandmother's name. But Baltimore's argument is somewhat of a red herring, for using drug proceeds to purchase real property was but one aspect of the multi-faceted conspiracy alleged in the indictment. Baltimore has ignored on appeal the other aspects of the conspiracy that are supported by sufficient evidence.

Specifically, one object of the conspiracy alleged in the indictment was to deposit cash derived from drug trafficking and wire fraud into the bank accounts of Baltimore's ostensibly legitimate businesses in an attempt to make the proceeds appear legitimate. Several of the overt acts involved large and frequent deposits of cash into bank accounts Baltimore maintained for his businesses. He opened one in the name of Baltimore Properties, LLC, and another in the name of Prestige Auto Imports, LLC. Neither business generated enough income to cover operating costs, however. When funds got low and bills needed to be paid, Baltimore's spouse and business partner, Olivia Baltimore, would ask Baltimore for money to cover company or personal expenses, and he would give her cash for deposit into the company accounts. She was specifically told never to deposit more than $10,000 at a time, presumably to avoid mandatory IRS reporting requirements implemented to help law enforcement discover money laundering. Olivia testified that the cash for deposit came from the wire-fraud mortgage scheme; she also suspected that some of it came from drug trafficking. Baltimore himself testified that the money received on the home purchases was used to help open the car dealership. In addition, one of Baltimore's cocaine distributors, Lucien

Kidd, testified that Baltimore told him the purpose of the businesses was to "be legit," meaning they were created "to wash money through [them]."

Based upon this evidence, the jury could have reasonably found that the cash deposited in the company accounts constituted proceeds from illegal activity involving wire fraud and drug trafficking and was intended at least in part to disguise the source of the proceeds. The evidence was sufficient to support Baltimore's conviction for conspiracy to launder money.

B.

Baltimore next challenges his conviction for engaging in a continuing criminal enterprise. The elements of the offense are: (1) the defendant committed a felony violation of federal narcotics laws; (2) the violation was part of a continuing series of three or more drug offenses committed by the defendant; (3) the defendant committed the series of offenses in concert with five or more persons; (4) the defendant acted as an organizer, supervisor, or manager with regard to these five or more persons; and (5) the defendant obtained substantial income or resources from this series of violations. *United States v. Burns*, 298 F.3d 523, 535 (6th Cir. 2002); 21 U.S.C. 848(c).

Baltimore challenges only the fourth element of the offense. He contends that "the vast majority of the government's evidence showed [only that he] engaged in individual drug sales to other individuals" who did not operate at his direction or control. He concedes that he organized, supervised, or managed two individuals – Tremine Norman and Fred Conner – both of whom he recruited to provide personal protection or to punish other drug dealers. Therefore, for the

conviction to stand, the evidence must demonstrate that Baltimore organized, supervised, or managed at least three others.

We have stated before that the § 848(c) relationship requirement is flexible. "The defendant's relationship with the five other individuals need not exist at the same moment in time. There can exist separate, individual relations with the five persons. And, the five individuals need not act at the same time." *United States v. Sinito*, 723 F.2d 1250, 1261 (6th Cir. 1983) (internal citation omitted). But simply buying drugs from an "organizer" does not meet the relationship requirement. *United States v. English*, 925 F.2d 154, 157 (6th Cir. 1991); *see also United States v. Jones*, 801 F.2d 304, 308 (8th Cir. 1986) (noting that merely "fronting" drugs, or selling them on credit, is not sufficient to establish organizer, supervisor, or manager status). A buyer-seller relationship must be coupled with some type of formal or informal authority of the seller over the buyer to establish the relationship necessary under the statute. *English*, 925 F.2d at 157. Evidence of authority can include instructing buyers regarding the language they may use to refer to drugs on the phone; setting drug resale prices; dictating the manner of sale to others – whether cash or credit – and to whom drugs may be sold; monitoring when buyers get paid by downstream purchasers; and dictating the quality and permissible dilution ratio of the drugs sold. *Id.* Moreover, apart from a buyer-seller relationship, a defendant organizes, supervises, or manages another if he is able to store drugs in the person's house or recruits the person to transport drugs on his behalf. *See United States v. Chalkias*, 971 F.2d 1206, 1214 (6th Cir. 1992) (per curiam); *see also United States v. Ward*, 37 F.3d 243, 247 (6th Cir. 1994).

The evidence shows that Baltimore organized, supervised, or managed at least three other persons in addition to Tremine Norman and Fred Conner. First, there is Anthony Johnson. At Baltimore's request, Johnson introduced Baltimore to the cocaine market in Lexington, Kentucky, and Baltimore began selling cocaine there with Johnson's help. Roughly once per week for two years the two would drive to Lexington to sell three to five kilograms of cocaine to customers that Johnson had developed for Baltimore. Johnson also introduced Baltimore to a friend who allowed Baltimore to store cocaine in her home regularly. Johnson also helped Baltimore transport cocaine to Covington, Kentucky. On one occasion, at Baltimore's instruction, Johnson distributed some of Baltimore's cocaine to another customer, Antonio Collins. Another time, Baltimore asked Johnson to cook cocaine into crack cocaine for another customer to appease the customer.

Next, there is Carlos Young. Young sold cocaine he bought from Baltimore on credit. But in order to be able to purchase cocaine from Baltimore, Young was required to travel to Lexington to pick up drugs from Baltimore's stash house and transport them to Cincinnati. Baltimore organized the scheme for transporting the drugs. The two would drive to Lexington in different cars to pick up Baltimore's drugs from his stash house. On the drive back, Baltimore would follow Young, who would carry the drugs. That way, if law enforcement attempted to pull over either car, Baltimore would distract them with a high-speed chase while Young safely transported the drugs back to Cincinnati. Baltimore supplied Young with a car from his lot for the trips.

Lucien Kidd also sold cocaine for Baltimore. Baltimore fronted Kidd drugs, and Kidd would sell them and repay Baltimore. In the beginning of their relationship, Baltimore told Kidd to find

an address to which Baltimore could ship cocaine from California. Kidd offered his aunt's address in Cincinnati, and Baltimore mailed the cocaine to that address. Baltimore organized the cocaine supply. In 2001, Baltimore began buying cocaine from a man named Armando Soto. Kidd was responsible for picking up the drugs each month from Soto. Kidd sometimes helped transport the cocaine to Baltimore's distributors in Lexington, even though he never sold drugs there himself. During the relationship, Kidd would follow Baltimore's instructions with respect to sales and distributions of cocaine. Once, Baltimore instructed Kidd to meet with Baltimore's lawyer at a hotel and give him $50,000 on Baltimore's behalf. Another time, Baltimore instructed Kidd to travel to the Kentucky Derby in Louisville to meet Baltimore and his attorney and drop off $10,000. After dropping off the money, Kidd drove straight back to Cincinnati.

Viewing the evidence in the light most favorable to the government, a jury could conclude that Baltimore was an organizer, supervisor, or manager with respect to five individuals he acted in concert with to sell drugs: Tremine Norman, Fred Conner, Anthony Johnson, Carlos Young, and Lucien Kidd.[5] The evidence was sufficient to support Baltimore's conviction for engaging in a continuing criminal enterprise.

V.

The government concedes that the drug conspiracy charged in count one is a lesser included offense of the continuing criminal enterprise charged in count five. *See Rutledge v. United States*,

---

[5]Having identified five individuals with whom Baltimore had the necessary relationship for purposes of § 848(c), we need not address whether his relationships with the numerous other individuals identified in the government's brief satisfy the statute.

517 U.S. 292, 307 (1996). Therefore, because we affirm Baltimore's conviction for engaging in a continuing criminal enterprise, we must vacate his drug-conspiracy conviction to avoid violating his rights under the Fifth Amendment's Double Jeopardy Clause. *See United States v. Avery*, 128 F.3d 966, 972 (6th Cir. 1997). Vacating Baltimore's drug-conspiracy conviction does not affect the mandatory life sentence imposed on his continuing-criminal-enterprise conviction. Accordingly, we need not remand for resentencing.

VI.

For these reasons, we vacate Baltimore's drug-conspiracy conviction (count one) and affirm in all other respects.