RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0305p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

J. RICHARD JAMIESON,
               *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,
               *Respondent-Appellee.*

No. 09-4376

> Appeal from the United States District Court
> for the Northern District of Ohio at Toledo.
> Nos. 02-00707-001; 09-01195—David A. Katz, District Judge.

Argued: December 3, 2010

Decided and Filed: September 6, 2012

Before: MARTIN, GIBBONS, and KETHLEDGE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** James B. Craven III, Durham, North Carolina, for Appellant. Seth D. Uram, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee. **ON BRIEF:** James B. Craven III, Durham, North Carolina, for Appellant. Seth D. Uram, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

PER CURIAM. Petitioner–appellant John Richard Jamieson, Jr., filed a motion to vacate, set aside, or correct a sentence by a person in federal custody under 28 U.S.C. § 2255, premised on the June 2, 2008, decisions of the Supreme Court of the United States, *United States v. Santos*, 553 U.S. 507 (2008), and *Cuellar v. United States*, 553 U.S. 550 (2008). The district court denied the motion. On appeal, Jamieson argues: (1) the district court erred in denying his motion as untimely; (2) the district court erred

in holding that he had waived his right to file the § 2255 motion; and (3) his convictions on the money laundering counts should be vacated based on *Santos* and *Cuellar*.

We affirm, but our reasoning differs from that of the district court. We hold that the district court erred in denying Jamieson's motion as untimely pursuant to § 2255(f)(3) but that his claim fails because the predicate offense does not merge to radically increase the statutory maximum sentence applicable to him.

I.

On January 18, 2002, a federal grand jury indicted John Richard Jamieson, Jr., and sixteen co-conspirators, charging Jamieson with conspiracy to defraud insurance companies and investors in violation of 18 U.S.C. § 371; promotion money laundering and aiding and abetting in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 2; international money laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i); concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); engaging in monetary transactions in property derived from specified unlawful activity and aiding and abetting in violation of 18 U.S.C. § 1957(a), (b)(1), and (b)(2); engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a), (b)(1), and (b)(2); and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and (a)(1)(A)(i).

On June 20, 2003, a jury convicted Jamieson.[1] On October 31, 2003, he was sentenced to 240 months' imprisonment followed by three years of supervised release and was required to make restitution. Jamieson appealed his conviction and sentence, and we affirmed his conviction on all counts but remanded for resentencing in accordance with *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Jamieson*, 427 F.3d 394, 418–19 (6th Cir. 2005).

After our decision in 2003 and prior to his resentencing, Jamieson and the government entered into a Joint Stipulation for Resentencing ("Joint Stipulation"). The

---

[1]For a summary of the facts underlying Jamieson's conviction, see *United States v. Jamieson*, 427 F.3d 394, 399–402 (6th Cir. 2005).

Joint Stipulation stated: "The Court should sentence the defendant to a term of imprisonment of 168 months. The parties agree a term of imprisonment of 168 months is sufficient, but no greater than necessary . . . . " The Joint Stipulation then stated that the court should order Jamieson to pay $20,016,498 in restitution to the victim investors of Liberte Capital Group, Inc./LLC. However, the Joint Stipulation provided that while imprisoned, Jamieson would not be required to pay restitution at a rate in excess of 20% of his gross prison income. Moreover, the restitution order did not extend to any amounts up to $500 per month that were credited to Jamieson's personal account in prison from outside sources, such as gifts. Nonetheless, any income or assets that Jamieson earned or acquired that were unrelated to his incarceration were fully subject to restitution.

The parties recognized that the sentencing factors of the Joint Stipulation were not "binding on the Court and the Court may, in its discretion, sentence the defendant to a term of imprisonment less than or greater than 168 months." Nonetheless, the Joint Stipulation bound Jamieson in the following manner:

> In return for the government's agreement to the sentencing stipulations set out above . . . , the defendant waives the right to further appeal his conviction and sentence on any ground, including any appellate right conferred under Title 18, United States Code Section 3742. The defendant further agrees not to contest his sentence in any post conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255. . . . Nothing in this paragraph shall act as a bar to the defendant perfecting any legal remedies defendant may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant's agreement to waive the appeal rights as described above is conditioned on the Court imposing a term of imprisonment of 168 months or less. If the Court imposes a term of imprisonment greater than 168 months, the appeal waiver in this paragraph shall be void and have no effect.

During the resentencing hearing on December 14, 2006, the government's counsel set forth the terms of the Joint Stipulation; the judge then questioned Jamieson if he agreed to its terms by asking, "I take it, therefore, that you are knowingly and voluntarily going to execute this agreement, and that you will live by its terms, am I

correct?" Jamieson replied, "You are correct." The district court then issued an Amended Judgment:

> Pursuant to the Sentencing Reform Act of 1984 and 18 United States Code, Section 3553-A, it is my judgment that the defendant, John Richard Jamieson, be and is hereby committed to the custody of the Bureau of Prisons, to be in prison for a term of 168 months on Counts 2 through 33, 35 through 100 and 158, all to be served concurrently. 60 months on Count 1 and 120 months on Counts 101 through 157, again, to be served concurrently with one another and with the 168 months imposed in the remaining counts for which I have sentenced this defendant. He shall be credited for all time served in federal custody.

Essentially, the district court approved the Joint Stipulation and sentenced in accordance with it.

On May 22, 2009, Jamieson filed a motion to vacate, set aside, or correct a sentence by a person in federal custody under 28 U.S.C. § 2255. Jamieson premised this motion on the June 2, 2008, decisions of the Supreme Court of the United States, *Santos* and *Cuellar*. The district court denied this motion as untimely and, alternatively, because Jamieson had "waived his right to appeal his sentence and conviction on any ground in the Joint Stipulation."

First, the district court reasoned that, pursuant to 28 U.S.C. § 2255(f), Jamieson was precluded from filing a motion challenging his conviction or sentence more than one year after the date on which his judgment became final. Because Jamieson's judgment became final on December 24, 2006, and Jamieson failed to file until May 2, 2009, the district court found that, "on that ground alone the petition under § 2255 must be dismissed."

Second, the district court added that Jamieson waived his right to appeal, and that such waiver could only be nullified "if [the district court] imposed a sentence greater than 168 months; [through] a collateral attack claim of ineffective assistance of counsel; or [through] a collateral attack of prosecutorial misconduct." The district court had sentenced Jamieson to 168 months, and no claims of ineffective assistance of counsel

or prosecutorial misconduct were made in the § 2255 motion.  The district court then analogized Jamieson's waiver in the Joint Stipulation to a waiver in a plea agreement and noted: "The plea agreement in [*United States v.*] *Hensel*[, 220 F. App'x 428, 432–33 (6th Cir. 2007)] and Jamieson's sentencing agreement/stipulation both contain valid waivers and a subsequent change in law that may have had a bearing on the negotiation of the agreement had it been in effect at the time thereof, will not affect the enforceability of that waiver."  The district court then held that Jamieson's claim "is prohibited by the sentencing agreement/stipulation he voluntarily entered into and affirmed in open court."

The district court then declined to apply *Santos* or *Cuellar* to Jamieson's case as he requested.  It stated that neither case had been made retroactively applicable, that neither case was applicable to Jamieson's case, and that the court had already articulated two reasons for dismissing the motion under § 2255.[2]  Jamieson appeals this decision and raises the following issues: (1) whether his § 2255 motion was timely filed with the district court; (2) whether he waived his right to file a § 2255 motion; and (3) whether the Supreme Court's decisions in *Santos* and *Cuellar* warrant altering his sentence or conviction.

II.

In reviewing a denial of a 28 U.S.C. § 2255 motion, we review the district court's legal conclusions *de novo* and its factual findings for clear error.  *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009).

III.

Jamieson first challenges the district court's finding that his motion filed pursuant to § 2255 was untimely.  Section 2255(f) sets forth the one-year statute of limitations for a motion under this section to, in relevant part, "run from the latest of –

---

[2]The court then noted: "While it may be indulged in by the Court of Appeals, and appropriately so, at this juncture it would be mere surplusage for this Judge to venture into that discussion, having already determined the motion must be dismissed on two alternative grounds."

(1) the date on which the judgment of conviction becomes final; . . . [or] (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f). The district court did not discuss whether Jamieson's motion might fit into the limitations period under § 2255(f)(3), but we find that (f)(3) applies.

The government concedes that Jamieson's motion was premised on the new rights set forth in *Santos* and *Cuellar* and that "such rights apply retroactively to otherwise timely § 2255 motions." Thus, the period of limitation "shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Because Jamieson filed his § 2255 motion on May 22, 2009, less than one year after *Santos* and *Cuellar* were decided on June 2, 2008, we disagree with the district court and hold that the motion was timely.

IV.

To prevail on the merits under § 2255,[3] Jamieson must show "a fundamental defect in the proceedings which inherently results in a complete miscarriage of justice or an error so egregious it violates due process." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). The core of Jamieson's argument is that, under *United States v. Santos*, 553 U.S. 507 (2008), the government had to prove that his money laundering convictions involved profits, not merely gross receipts. Jamieson asserts that no such evidence was presented at trial and that we should therefore vacate his conviction. To understand why this argument fails, a brief summary of *Santos* and our subsequent decision in *United States v. Kratt*, 579 F.3d 558 (6th Cir. 2009), is necessary.

---

[3]Because we are able to dispose of Jamieson's motion easily on the merits, we choose not to consider the waiver issue.

A.

In *Santos*, the defendant was convicted of conspiracy to run an illegal gambling business and the substantive offense of running an illegal gambling business, as well as conspiracy to commit money laundering and the substantive offense of money laundering. 553 U.S. at 509. The Court considered "whether the term 'proceeds' in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), means 'receipts' or 'profits.'" *Id.* Recognizing that the word "proceeds" was ambiguous in the statute, a plurality of the Court held that "[b]ecause the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted." *Id.* at 514. The plurality further explained that defining "proceeds" as "profits" was required to avoid a "merger problem." *See id.* at 515–16 (internal quotation marks omitted). Santos's illegal gambling offense carried a maximum of five years in prison, while the money laundering offense carried twenty years. *Id.* at 516. But "[i]f 'proceeds' meant 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." *Id.* at 515. Construing the term "proceeds" as "profits" in the money laundering statute prevented Santos's sentence from automatically spiking from five to twenty years. The plurality appeared to hold that "proceeds" always meant "profits," *id.* at 514, but Justice Stevens, in a concurrence resting on narrower grounds, contended that the "Court need not pick a single definition of 'proceeds' applicable to every unlawful activity . . . . " *Id.* at 525 (Stevens, J., concurring).

Three years later, we clarified the meaning of *Santos* with our decision in *Kratt*. We first held that the term "proceeds" has the same meaning in 18 U.S.C. § 1956 (at issue in *Santos*) and § 1957 (at issue in *Kratt*). *Kratt*, 579 F.3d at 560. We then set forth the following rule: "'[P]roceeds' does not always mean profits . . . ; it means profits only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase." *Id.* at 562. Thus, *Kratt*

established a three-part inquiry in light of *Santos*: (1) is there a merger problem; (2) does this problem lead to a radical increase in the statutory maximum sentence; and (3) does the legislative history fail to show that Congress intended the increase?  If the answer to *all three* questions is yes, "proceeds" means "profits."  If the answer to any question is no, then "proceeds" means "gross receipts."  *See United States v. Cosgrove*, 637 F.3d 646, 654–56 (6th Cir. 2011) (explaining and applying the "*Santos-Kratt* framework").

B.

We focus here on the second prong of the *Santos-Kratt* test and begin by recalling the offenses for which Jamieson was convicted.  He was convicted on count one of the indictment for conspiracy to defraud in violation of 18 U.S.C. § 371.  R.1, at 2–26.  He was also convicted on counts 2 through 100 for money laundering in violation of 18 U.S.C § 1956, and on counts 101 through 157 for engaging in monetary transactions from property derived from unlawful activity in violation of § 1957.  R.1, at 26–38, 39–53.  Finally, he was convicted on count 158 of conspiracy to commit money laundering in violation of § 1956.  R.1, at 54–56.

It is key to identify the proper predicate offense for counts 2 through 157—*i.e.*, Jamieson's convictions under § 1956 and § 1957.  Section 1956 targets "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of *unlawful activity*, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of *specified unlawful activity*." § 1956(a)(1) (emphases added).  Section 1957 similarly targets anyone who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property . . . derived from *specified unlawful activity*."  § 1957(a) (emphasis added).  The term "specified unlawful activity" is cross-referenced to mean "any act or activity constituting an offense listed in [18 U.S.C.] section 1961(1)." § 1956(c)(7)(A); *see also* § 1957(f)(3).  And § 1961(1) lists mail fraud, § 1341, as a specified unlawful activity.  To summarize, in order to commit a violation of either § 1956 or § 1957, one must know that the property involved represents the proceeds of a "specified unlawful activity"—which includes mail fraud under § 1341.  Accordingly, we find that mail fraud is the predicate

offense for Jamieson's § 1956 and § 1957 convictions, represented by counts 2 through 157 of the indictment. *See United States v. Van Alstyne*, 584 F.3d 803, 810 (9th Cir. 2009) (finding that mail fraud is a predicate offense of money laundering). Jamieson's indictment bears this out: in each set of counts under § 1956 and § 1957, the indictment includes a charge under the mail fraud provision, § 1341.**4** *See* R.1, at 26, 29, 32, 36, 39, 48.

With § 1341 as the predicate offense, Jamieson's argument fails under the second prong of the *Santos-Kratt* framework. A mail fraud conviction under § 1341 carries a maximum sentence of twenty years, which is the same maximum statutory sentence for a conviction under § 1956 and ten years *more* than a conviction under § 1957. *See* § 1341; § 1956(a)(3); § 1957(b)(1). Because the predicate offense of mail fraud carries a maximum sentence that is already greater than or equal to the maximum statutory sentences under § 1956 and § 1957, there is no risk that merging the predicate offense would increase Jamieson's sentence. In other words, even if we assume that § 1341 merges into § 1956 and § 1957, the merger does not "lead[] to a radical increase in the statutory maximum sentence." *Kratt*, 579 F.3d at 562.

Accordingly, "proceeds" are not defined as "profits" but rather as "gross receipts" in the case at bar, and Jamieson's claim that the government did not prove that he gained "profits" through his offense must fail. As a result, Jamieson has not shown

---

**4**Conspiracy to commit mail fraud in violation of § 371, which was charged under count one of the indictment and carries a maximum sentence of only five years, is not the predicate offense here. First, § 1956 and § 1957 themselves point to § 1341 as a predicate offense, not to § 371. *See* § 1961(1) (listing § 1341 but not § 371 as a "specified unlawful activity" cross-referenced in § 1956 and § 1957). Second, it does not matter that § 1341, unlike § 371, was not separately charged in the indictment. There is no requirement that a defendant be separately charged with or convicted of an offense for it to qualify as a predicate offense. *See United States v. Cherry*, 330 F.3d 658, 667 (4th Cir. 2003) ("It is clear that a defendant may be convicted of money laundering even if she is not a party to, much less convicted of, the specified unlawful activity."). Indeed, if an indictment *does* separately charge money laundering under § 1956 and mail fraud under § 1341, and the defendant is convicted on the former but acquitted on the latter, the result is still "logically consistent" because money laundering "'does not require proof that the defendant committed the specified predicate offense, it merely requires proof that the monetary transaction constituted the proceeds of a predicate offense.'" *United States v. Martinelli*, 454 F.3d 1300, 1312 n.8 (11th Cir. 2006) (quoting *United States v. Richard*, 234 F.3d 763, 768–69 (1st Cir. 2000)). Simply put, a defendant could be found guilty on a one-count indictment for money laundering, which requires proving that the transaction in question involved the proceeds of a specified unlawful activity—*i.e.*, a predicate offense, like mail fraud—without mail fraud being separately charged in the indictment.

"a fundamental defect in the proceedings" required for relief under § 2255. *See Ward*, 995 F.2d at 1321.

V.

For the foregoing reasons, we affirm the decision of the district court denying Jamieson's § 2255 motion.