NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0103n.06

No. 10-2167

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 30, 2013**

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DONALD MAYNARD BUFFIN, JR., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |

Before:  COLE and DONALD, Circuit Judges; RUSSELL, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge.**  This case involves the question of whether the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008), requires us to interpret "proceeds" as "profits" for purposes of concealment money laundering under 18 U.S.C. § 1956.  We hold that it does not, and accordingly **AFFIRM** the decision of the district court.

I.

Donald Maynard Buffin, Jr., was a salesman and an office manager for a fraudulent investment business known as Access Financial ("Access").  *See United States v. Flynn*, 265 F. App'x 434, 436 (6th Cir. 2008).  Access claimed to be a profitable investment enterprise, providing large "returns" to clients.  *Id.*  The company, however, was a Ponzi scheme that relied on redistributions of invested principal and mailed "newsletter" updates to further the scheme.  *Id.* at

_____

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

443. Buffin's co-defendants, including the masterminds of the fraudulent scheme, amassed $20.7 million in total receipts, with $8.4 million being redistributed to investors, $4.8 million diverted for personal use, and $7.3 million used for ancillary transfers and payments. *Id.* at 437-38. The conspirators funneled money through a complex web of bank accounts, keeping no records as to where their investors' funds had gone. *See id.* at 438.

As office manager, Buffin was responsible for payroll and management of Access's bank accounts. To collect his own compensation from Access, Buffin set up a checking account under the name "His Will Ministries." In turn, he used funds from this account to pay his personal expenses. During his time at Access, Buffin hosted seminars to obtain new investor funds to feed into the scheme. He also diverted investor funds into his own account, which he used for his own personal expenditures.

A grand jury returned an eighty-three count superseding indictment charging Buffin and his co-defendants with various counts of mail fraud, conspiracy to commit mail fraud, conspiracy to commit money laundering, conspiracy to defraud the United States of income tax, promotion money laundering, and concealment money laundering. On June 14, 2005, after a five-week jury trial, Buffin was found guilty on all counts. He was sentenced to 180 months in prison. Buffin appealed; this court affirmed his conviction and sentence. *See generally Flynn*, 265 F. App'x at 434.

Three years after his conviction, the Supreme Court issued its decision in *United States v. Santos*, 553 U.S. 507 (2008). Justice Stevens issued a concurring opinion in which he explained that "proceeds" for purposes of the money-laundering statute could be interpreted as requiring a showing of profits in some cases and gross receipts in others, *see id.* at 524-28 (Stevens, J., concurring); this

court recognized Justice Stevens's concurrence as the controlling opinion in *United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009).

In light of the *Santos* decision, Buffin filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The district court denied his § 2255 motion and denied issuance of a certificate of appealability, explaining that Buffin procedurally defaulted his claim and that he was unable to demonstrate either (1) cause and prejudice or (2) actual innocence. Buffin timely appealed. We granted a certificate of appealability to determine "[w]hether the government failed to establish that the proceeds used to convict Buffin of money laundering were profits rather than gross income, and whether such a showing was required by *United States v. Santos*, 553 U.S. 507 (2008)."

## II.

If a sentence imposed by a federal court is "not authorized by law or [is] otherwise open to collateral attack," the court must, upon motion of the petitioner in custody, "vacate and set the judgment aside and . . . discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255 (2006). Generally, collateral review is improper if the issues raised in the habeas petition are not first raised on direct appeal and are thus procedurally defaulted. *See Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011). Procedural default, however, may be excused "if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *See id.* (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). In reviewing a denial of a motion under 28 U.S.C. § 2255, "we apply a *de novo* standard of review to the legal issues and uphold the factual findings of the district court unless they are clearly erroneous." *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009).

Buffin claims that the *Santos* decision constitutes an intervening Supreme Court decision that serves as cause to excuse his procedural default. To support his argument, he cites our decision in *Hilliard v. United States*, 157 F.3d 444 (6th Cir. 1998), where we held that a habeas petitioner could "show sufficient cause for his belated objection" because an intervening Supreme Court decision made erroneous previously-acceptable jury instructions. *See id.* at 450. As we have not relied on *Hilliard* since 2000, we have doubts as to its continuing vitality. *See generally Clay v. United States*, No. 98-5243, 2000 WL 222563 (6th Cir. Feb. 18, 2000). Moreover, our sister circuits have declined to conclude that the intervening change created by *Santos* provides sufficient cause to excuse procedural default, even in instances where prior circuit precedent previously foreclosed a *Santos*-type argument. *See United States v. Thorn*, 659 F.3d 227, 233 (2d Cir. 2011) ("A defendant cannot establish cause for a procedural default by showing 'simply that a claim was unacceptable to that particular court at that particular time.'" (quoting *Bousley*, 523 U.S. at 623)).

Mindful of these concerns, we decline to adjudicate this case under the cause-and-prejudice prong of the procedural default analysis. The actual innocence prong provides an adequate framework by which we may better analyze the substance of Buffin's claims. *See, e.g.*, *Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012). Under this standard, actual innocence is demonstrated by showing "(1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner had meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him." *Id.* at 307-08.

This court has previously held that the proceeds-equals-profits interpretation of 18 U.S.C. § 1956 is "a new interpretation of statutory law." *See United States v. Kratt*, 579 F.3d 558, 560 (6th Cir. 2009); *see also Wooten*, 677 F.3d at 308. Buffin's direct appeal was decided four months prior to the Supreme Court's decision in *Santos*. *See generally Flynn*, 265 F. App'x at 444. Thus, the intervening change occurred after he had "a meaningful time to incorporate the new interpretation into his direct appeals." *See Wooten*, 677 F.3d at 307-08. The *Wooten* court further held that "the new definition of a key phrase in the money laundering statute [was] a substantive change of law," therefore "increas[ing] the government's burden of proof" and making the *Santos* decision a retroactively applicable one. *Id.* at 308-09. With the first three prongs of the actual innocence inquiry satisfied, the only remaining query is whether the *Santos* decision, as applied to the merits of the petition, "make[s] it more likely than not that no reasonable juror would have convicted [Buffin]." *See id.* at 308.

### III.

"Under the *Santos-Kratt* framework, a merger problem arises when defining 'proceeds' as 'receipts' automatically makes commission of the predicate offense a commission of money laundering and where the predicate offense carries a much lower statutory maximum than the associated money laundering charge." *United States v. Crosgrove*, 637 F.3d 646, 655 (6th Cir. 2011). Put differently, if the predicate offense is, standing alone, "sufficient to prove both money laundering and mail/wire fraud," the two crimes potentially merge. *See Wooten*, 677 F.3d at 310 (citing *Crosgrove*, 637 F.3d at 655). For purposes of *Santos*, however, the merger must "radically

increase[] the sentence for that crime." *See Kratt*, 579 F.3d at 562 (quoting *Santos*, 553 U.S. at 528 (Stevens, J., concurring)).

Having established the basic guideposts of our inquiry, we must now take the peculiar step of explaining what does *not* govern our analysis today. After the close of briefing in this case, we issued our opinion in *Jamieson v. United States*, 692 F.3d 435 (6th Cir. 2012) (per curiam) (*Jamieson II*). In that case, we held that "[b]ecause the predicate offense of mail fraud [under § 1341] carrie[d] a maximum sentence that [was] already greater than or equal to the maximum statutory sentence under § 1956, . . . there [was] no risk that merging the predicate offense would increase Jamieson's sentence." *Id.* at 441. While the *Jamieson* petitioner was convicted of charges arising from offenses committed between 1996 and 2000, *see United States v. Jamieson*, 427 F.3d 394, 399-400 (6th Cir. 2005) (*Jamieson I*), we looked to the current statutory maximum sentence to determine whether the offenses merged for *Santos* purposes. *See Jamieson II*, 692 F.3d at 441 ("A mail fraud conviction under § 1341 carries a maximum sentence of twenty years. . . .").

It appears that *Jamieson II* directs us to consider the current statutory maximum for offenses committed prior to 2002, a category that Buffin's offenses certainly fall under. At this point, it is worth noting that 2002 was the year that the twenty-year maximum sentence was statutorily imposed. *See* Sarbanes-Oxley Act of 2002, Pub. L. 107-204, § 903(a), 116 Stat. 745, 805. Prior to this, the statutory maximum for mail fraud was five years. *See* 18 U.S.C. § 1341 (2000). In light of these

observations, *Jamieson II*'s consideration of the current statutory scheme for a predicate offense of mail fraud that occurred prior to 2002 appears to conflict with Supreme Court precedent.[**]

Absent contrary congressional intent, we are directed by the Supreme Court to prospectively apply revisions to sentencing statutes only to "cases in which that initial offense occurred after the effective date of the amendment." *Johnson v. United States*, 529 U.S. 694, 702 (2000). We ignored that directive in *Jamieson II* by considering the current statutory maximum for a pre-2002 mail fraud offense, but decline to do so again here simply for the sake of maintaining consistent circuit precedent. While we acknowledge the venerable principle that "one panel of a circuit court will not overrule the decision of another panel" and that "only the court sitting *en banc* may overrule a prior decision of a panel," *see United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996), the countervailing principle that we are in no position to disregard the precedent of the Supreme Court must prevail here. *See Stewart v. Blackwell*, 444 F.3d 843, 874 (6th Cir. 2006) ("[W]e, as an inferior court, are not in a position to disregard Supreme Court precedent. . . ."), *superseded on other grounds by* 473 F.3d 692 (6th Cir. 2007) (en banc).

---

[**] *Jamieson II* also appears to conflict with circuit precedent. The panel's decision to conflate conspiracy under § 371 with the predicate offense of money laundering conflicts with our decision in *Crosgrove*. *Compare Jamieson II*, 692 F.3d at 441 (reasoning that, as mail fraud is the underlying predicate offense for a § 371 conspiracy charge, the maximum statutory sentence is effectively twenty years for such conspiracy charges), *with Crosgrove*, 637 F.3d at 655 ("In Crosgrove's case, the statutory maximum for conspiracy to commit mail/wire fraud was five years. . . ."). This latent conflict with circuit precedent further buttresses our decision not to rely on *Jamieson II*. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001) ("[W]hen a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case." (citations omitted)).

Hence, notwithstanding *Jamieson II*, we observe the following: the applicable statutory maximum for mail fraud in the present case is five years. The applicable maximum for money laundering is, and has been, twenty. *See* 18 U.S.C. § 1956(a) (2000). Accordingly, the second prong of the *Santos-Kratt* inquiry is satisfied: the predicate offense of mail fraud, under the pre-2002 sentencing scheme, "carries a much lower statutory maximum than the associated money laundering charge." *See Crosgrove*, 637 F.3d at 655. Our only remaining inquiry is whether "a merger problem arises when defining 'proceeds' as 'receipts' automatically makes commission of the predicate offense a commission of money laundering." *Id.*

IV.

The Government readily concedes that "Buffin has satisfied the requirements for collateral relief" as to the promotional money laundering counts at issue in this case. As a result, the concession obviates any need to address the issue further. *See United States v. Judge*, 649 F.3d 453, 455 n.2 (6th Cir. 2011). Instead, the Government has opted to place all its proverbial eggs in the basket of concealment money laundering. This narrows our inquiry accordingly; we must now determine whether defining "proceeds" as "receipts" triggers a merger problem where the predicate offense of mail fraud would automatically lead to a commission of concealment money laundering. We conclude that it does not.

Buffin argues that, under *Kratt*, the definition of proceeds "must have the same meaning throughout the money-laundering statutes even if that means applying a profits definition to money-laundering provisions that do not create a merger problem." Buffin reads *Kratt* as suggesting that proceeds means profits for each offense under § 1956. (*See* Reply Br. at 6 ("For a particular

predicate offense, if the *Santos* rule applies under any provision of the statute, then 'proceeds' means profits for each of § 1956's provisions.")).

This argument misinterprets our holding in *Kratt*. Our decision there did not establish that the definition of proceeds must apply consistently *throughout* each of the money-laundering statutes; instead, we determined that the definition of proceeds must apply consistently *across* both statutes. Because § 1956 and § 1957 "criminalize similar acts . . . and simply do so from slightly different angles," and because the "same predicate offenses—more than 250 of them" are covered by both statutes, the *Kratt* court saw a need to maintain consistency between both statutes. *See Kratt*, 579 F.3d at 560-61. We said nothing to suggest that "proceeds" must be interpreted as "profits" for all offenses of the same statute.

To the contrary, we concluded the opposite. We acknowledged the "unsatisfying" reality that, by hewing closely to Justice Stevens's concurrence in *Santos*, we would need to "define 'proceeds' for over 250 predicate offenses[,] . . . a regime that may generate a cottage industry of *Santos* litigation for years to come." *Id.* at 563. It is true that we generally "interpret statutory language as a coherent whole and give consistent meaning to terms throughout the statute." *See United States v. Erpenbeck*, 532 F.3d 423, 441 (6th Cir. 2008) (citation and quotation marks omitted). We overrode that presumption in *Kratt*, however, when we eschewed the *Santos* plurality's rationale in favor of Justice Stevens's offense-by-offense approach. *See Kratt*, 579 F.3d at 562 (using the *Marks* doctrine to conclude that following Justice Stevens's approach as a "subset" of the plurality's was the proper way to interpret *Santos*). Therefore, Buffin's argument contradicts the very heart of our post-*Santos* jurisprudence.

Rejecting Buffin's argument, however, does not definitively answer the question of whether there is merger here. In attempting to do so, we must be mindful that our interpretation of *Santos* "requires us to apply a *defendant-unfriendly* approach." *Kratt*, 579 F.3d at 563 (emphasis in original).

We begin with the elements: commission of mail fraud does not "automatically" lead to commission of *concealment* money laundering. *See Crosgrove*, 637 F.3d at 655. To prove mail fraud, the Government must show "(1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive the victim of money or property." *See United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (citation omitted). To prove concealment money laundering, the Government must demonstrate: "(1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conducting or attempting to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership, or control of the proceeds." *See United States v. Baltimore*, 482 F. App'x 97, 983 (6th Cir. 2012) (citing 18 U.S.C. § 1956(a)(1)(B)(I); *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000)).

Proving mail fraud could satisfy the first two prongs of the concealment analysis: it would serve as the foundational fruits of unlawful activity that a prospective launderer would then try to conceal. Mail fraud, however, typically does not require the additional step of proving that someone in possession of unlawfully obtained funds has conducted, or attempted to conduct, a financial transaction to "disguise the nature, location, source, ownership, or control of the proceeds." As the elements of mail fraud are not entirely coextensive with the elements of concealment money

laundering, the "automatic" commission that serves as the foundation for merger under the *Santos-Kratt* framework is absent in this case.

The indictment further buttresses our conclusion. In *Crosgrove*, we observed that the crimes of conspiracy to commit mail/wire fraud and conspiracy to commit money laundering merged. *See Crosgrove*, 637 F.3d at 655. In doing so, we examined the indictment and found that "the payments Crosgrove received for his services as an attorney and claims adjuster" served as the factual predicate for both conspiracy charges. *See id.* We noted that "[t]he indictment itself . . . reveal[ed] the Government's position that conspiracy to commit mail/wire fraud would, without any additional action by Crosgrove, also constitute a money laundering conspiracy." *Id.*

This is not so in the instant case. The Government relied on a series of separate predicate acts, i.e., Buffin's depositing of checks to "His Will Ministries," to serve as the basis for proving concealment money laundering. In contrast, Buffin's mail fraud convictions were premised primarily on newsletter mailings and fraudulent checks to investors. The Government's reliance on separate factual predicates supports the notion that the crimes do not "obviously merge" here.

Finally, the weight of authority from our sister circuits supports our decision today. The Seventh Circuit in *United States v. Aslan*, 644 F.3d 526 (7th Cir. 2011), held that there was no merger between concealment money laundering and the predicate offense of wire fraud, as the concealment "formed an entirely separate offense of money laundering." *See id.* at 546. Wire fraud, the court reasoned, "punishes the scheme, not its success," whereas money laundering dealt with the fruits of the fraud. *See id.* at 545-46. The court reaffirmed this observation in *United States v. Hosseini*, 679 F.3d 544 (7th Cir. 2012), where it reiterated that "the merger problem dissipates [in

concealment money laundering cases] when the government alleges that the defendant specifically entered into a transaction to conceal the source or nature of ill-gotten gains." *Id.* at 552. The Ninth Circuit has come to a similar conclusion in its cases, particularly in *United States v. Wilkes*, 662 F.3d 524 (9th Cir. 2011), where it explained that the *Santos* decision did not "require[] the jury instructions regarding [concealment] money laundering to define 'proceeds' as 'profits.'" *Id.* at 549. We see no reason to deviate from these conclusions, in light of our own analysis establishing the same.

V.

This leaves us with a Solomonic dilemma: Buffin's convictions for promotion money laundering are invalid, but his sentence can nevertheless be sustained by his conviction for concealment money laundering. The Government asks us to invoke our discretion of inaction, namely in the form of the concurrent sentencing doctrine, which allows us to "decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *United States v. LaPointe*, 690 F.3d 434, 439 n.1 (6th Cir. 2012) (quoting *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989)). While it is true that we must consider "adverse collateral consequences" such as "delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma," *United States v. DeCarlo*, 434 F.3d 447, 457 (6th Cir. 2006), we must be mindful that those consequences are most salient on direct appeal, not on a collateral challenge. With no compelling reason to decide otherwise, we adhere to our general principle of

"declin[ing] to collaterally review sentences that fall within the statutory maximum." *United States v. Peterman*, 249 F.3d 458, 462 (6th Cir. 2001).

## VI.

For these reasons, we **AFFIRM** the decision of the district court.